Gould, Adm'r, v. The Chicago, Burlington & Quincy R'y Co.

AFFIRMED.

---

GOULD, ADM'R, v. THE CHICAGO, BURLINGTON & QUINCY R'Y Co.

1. **Railroads:** INJURY TO ENGINEER: PROXIMATE CAUSE: NEGLIGENCE. Although the defendant may have been negligent in not giving an expected signal, yet, as such negligence was not the proximate cause, if cause at all, of the injury complained of, the defendant is not liable.

2. ——: DANGEROUS STRUCTURES: NEGLIGENCE IN ERECTING. The whole business of operating railroad trains is dangerous; and an instruction to the effect that a railroad company is liable for an injury to an engineer caused by an erection which is dangerous to persons operating trains is erroneous, unless limited to persons operating trains *in the exercise of ordinary care.*

3. **Practice in Supreme Court:** QUESTIONS IN REGARD TO EVIDENCE: WHEN NOT CONSIDERED. It is not the custom of this court to express views as to the evidence, when a cause is sent back for retrial for errors committed by the trial court in instructions, or otherwise, in settling the law of the case.

*Appeal from Des Moines Circuit Court*

WEDNESDAY, JULY 22.

ACTION to recover the damages sustained by the estate of which plaintiff is the administrator, resulting from the death of an intestate, caused, as it is alleged, by the carelessness of defendant and its employes. At the time of intestate's death

he was in the employment of defendant as an engineer, operating a locomotive running upon defendant's road. The injuries resulting in his death were received while engaged in such employment. There was a judgment upon a verdict for plaintiff. Defendant appeals.

*H. H. Trimble, J. W. Blythe* and *Thomas Hedge, Jr.,* for appellant.

*Poor & Baldwin,* for appellee.

BECK, CH. J.—I. The intestate, at the time of his death, was the engineer in charge of an engine drawing a freight

1. RAILROADS: injury to engineer: proximate cause: negligence.

train between Burlington and Ottumwa. He was instructed to make the trip without stopping at any station unless signaled or specially directed. It appears that it was the duty of the conductor or brakeman of the rear end of the train, when passing stations, to make signals to the engineers. The train having reached Leffler, and the engine and many cars having passed the station-house, the intestate, after making inquiry of the firemen in regard to the expected signal, which, it appears, was not given, went to the side of the engine usually occupied by the fireman, and leaned out of the "gangway," looking back for the expected signal. He was almost instantly struck upon the head by a "water-crane" or "water-column," causing an injury which soon resulted in death. The water-crane, or the frame supporting it, was about two feet from the floor of the gangway upon which intestate was standing when he received the injury.

II. The circuit court gave to the jury the following instruction: "(10) If you find from the evidence that it was the duty of the conductor to give, or cause to be given, a signal to the engineer about the time the car passed Leffler's station, and that the conductor negligently failed to give, or have the usual signal given, then the defendants were guilty of negligence." We think the instruction ought not to have

been given. The failure of the conductor to give the signal was undoubtedly negligence; but it is plain that it was not the proximate cause of the injury. Indeed, the failure to give the signal did not cause the intestate to expose himself to the danger of the water-crane by looking for the signal. He acted as he did for the purpose of discovering the signal, and, had it been given, he would, notwithstanding, have met with the accident. The failure to give the signal did not require him to expose himself to danger. It was his duty to look for it, whether it was given or was not given, and the result would have been alike in each case. It therefore cannot be said that the negligence of the conductor in failing to give the signal was the proximate cause, or one of the proximate causes, of the injury. But the instruction just quoted holds defendant liable for the negligence of the conductor which, to say the most of it, had but a remote influence in causing the accident.

III. The court gave instructions in the following language: "*Sixth.* It is also the duty of the company to use

2. ——— : dangerous structures : negligence in erecting.

reasonable and proper precautions to protect its employes from injury while engaged in the performance of their duties. *Seventh.* If you find from the evidence that the water-column was placed in such close proximity to the track as to be dangerous to the persons operating the trains, you will be justified in finding that defendants were guilty of negligence in the erection and location of the column. *Eighth.* On the other hand, if you find from the evidence that the crane was so located as to be reasonably safe for train-men operating trains in a reasonably safe and prudent manner, then defendants were not guilty of negligence in the location of the crane."

The sixth and eighth of these instructions are correct, but, in our opinion, the seventh is erroneous and misleading. It is not true that a railroad company is to be regarded as negligent in erecting or maintaining contrivances or things for use in the operation of their roads, for the reason that they

Gould, Adm'r, v. The Chicago, Burlington & Quincy R'y Co.

are "dangerous to the persons operating the trains." Indeed, the whole business of operating trains is "dangerous." It is full of perils to those employed therein. Because there is danger, it does not follow that the companies are negligent as to the things from which the danger springs. The instrction should have expressed the thought that if the crane was dangerous to persons operating trains *in the exercise of ordinary care*, the defendant was negligent in constructing it. It is possible that this thought may be discovered in reading the seventh and eighth instructions together. But it is clear to our minds that, taken together, they are misleading, and that the jury reached the conclusion, upon finding there was danger from the crane, that defendant was negligent, without inquiring whether the danger could have been avoided by the exercise on the part of the intestate of proper care.

IV.   Counsel for defendant claim that the evidence shows that the intestate was negligent, and that no negligence upon 3. PRACTICE the part of defendant is made to appear. They in supreme court: ques- insist, too, that if negligence of defendant is tions in regard to evidence: shown, it was waived by intestate's remaining in when not considered. the employment of defendant without complaint or protest. They also complain of certain rulings upon the admission of evidence. These questions ought not now to· be considered by us. They all pertain to the evidence submitted to the jury, which may not be the same at another trial. We are not accustomed to express views as to the evidence when a cause is sent back for a retrial upon errors in instructions, or for other errors committed in settling the law of the case by the court below. For the errors in the instructions pointed out, the judgment of the circuit court is

REVERSED.