THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD CO. *v.* OSTMAN, ADMINISTRATRIX.

[No. 17,434. Filed December 22, 1896.]

NEGLIGENCE.—*Master and Servant.*—In an action based upon negligence it must be shown that the master was guilty of the negligence charged and that the servant was free from contributory negligence at the particular time of the alleged injury.

SAME.—*Railroads.*—*Maintaining Cattle Chute in Close Proximity to Sidetrack.*—The correct standard by which the negligence of a rail-

road company is measured, in an action for an injury to one of its trainmen arising out of its alleged negligence in maintaining a cattle chute in too close proximity to its tracks, is whether same is dangerous to persons operating its trains, when they are exercising, under the particular circumstances, ordinary care.

MASTER AND SERVANT.—*Railroads.—Contributory Negligence.*—A locomotive fireman who, while in the discharge of his duties as such fireman was leaning out of the window of the cab and looking backward for signals, struck his head against a cattle chute which stood 13 inches from the cab window and was killed, is chargeable with a knowledge of the dangerous proximity of said chute to a passing engine and was guilty of contributory negligence in leaning out of the cab while passing said chute, where it is shown by the special finding of the jury that he had been in the employ of the defendant for 16 months and had passed the cattle chute twice each week during such time and had frequently done switching at such point and was familiar with the printed rules of the company which enjoined upon the employes to take time in all cases to do their duty in safety whether at the time acting under orders of a superior or otherwise.

From the Allen Circuit Court. *Reversed.*

*Morris, Bell, Barrett & Morris,* for appellant.

*Ninde & Ninde,* for appellee.

JORDAN, C. J.—Appellee commenced this action in the lower court to recover damages of appellant, arising out of the death of her decedent, Charles Ostman, by reason of the alleged negligence of the railroad company. The deceased was the husband of appellee, and the fatal accident which resulted in his death, occurred on April 8, 1891, at Burr Oak, a station on appellant's line of railway. There was a special verdict returned by the jury, upon which the court rendered its judgment, in favor of the appellee, for $4,000.00, the amount assessed by the jury. Among the errors assigned by the appellant is one based upon the action of the court in awarding a judgment to appellee, under the facts set out in the special verdict.

From the special verdict the following facts appear:
"The defendant owned and operated a railroad, running from the city of Buffalo, in the state of New York, through the city of Fort Wayne and the town of Burr Oak, in the State of Indiana, to the city of Chicago, in the state of Illinois; that the deceased for eighteen months prior to his death was in the employ of the defendant as a locomotive fireman, and for sixteen months prior to his death said deceased was employed by said defendant as fireman on its engine 169, and continued to be so employed till his death, as hereinafter set forth; that during said period said deceased, in the discharge of his duties, passed said station at Burr Oak twice each and every week, and frequently did switching and work at said station; that during all said period the defendant had a side track and spur switch at said town of Burr Oak, both of which were located north of the main track of said railroad; that said side track was about 800 feet long, the east switch of which was about 400 feet east of the cattle chute, hereinafter described, and the west switch of which side track was west of the depot, hereinafter described; that at said point, 450 feet west of said east switch, the defendant had maintained, near to and on the north side of said side track, cattle pens, from which there was a cattle chute about eighteen feet long leading from said pens so near to the track that by the aid of fences, gates and doors, the stock was driven from said pens into the defendant's cars to be transported; that said chute was constructed as follows:  Three oak posts six inches square were planted in the ground about equally distant from the north rail of said side track.  Said posts were eleven feet six inches high.  One of said posts was located on the west side of said cattle chute, and one about the middle, and one on the east side thereof; that a fence was

constructed from each of said posts north to said cattle pens; that said fence from the said middle post north to the cattle pens divided said chute into two parts; that by means of said middle fence the said chute between it and said west fence was six feet and two inches wide, and the chute between said middle fence and the east fence was the same width; that said fence was constructed of pine boards six inches wide and six inches apart; that a gate was constructed out of pine boards, so that the boards of said gate were so adjusted to said fence that each board of the gate was located in each space between the boards of the fence, and said gate was about eighteen feet long and three feet six inches wide, and was operated by being pushed towards and from the car to be loaded. At the north end of the gate was a board or batton nailed across the ends of the gate boards to hold them in place, and on the west side of the south end of the gate was a similar board nailed across the ends of the boards of the gate and on the east side of the gate and fence were boards nailed so as to allow the gate to move north and south along the spaces between the boards of the fence. The said board so nailed across the south ends of the gate boards, was placed on the west side of the gate so that when the gate was shoved northward the north edge of said board would strike the face of said post, and prevent said gate from slipping back till the south end thereof was back flush with the south face of the post, but because of said board striking said post the south end of the gate, at the time the deceased was killed, was six inches further south than the post, and six inches nearer the track than said post; that the south face of said post was, at the time said deceased was killed, thirty-eight inches north of the center of the top of the north rail of said side track, and the south end of said gate, at

the time said deceased was killed, was thirty-five inches north of the said center of said rail; that the cab of said engine is eight feet and six inches wide; that the distance between the north side of said cab, at the window thereof, where deceased was looking out, and the part of said cattle chute his head came in collision with, was thirteen inches; that said distance between said cab and said cattle chute made the said cattle chute so placed extra hazardous for the deceased and other trainmen of said defendant; that the deceased did not know, nor have any reason or opportunity to know that any part of said chute was within said distance of thirteen inches of said cab as it passed the same, but that the defendant and its proper agents and servants did know that said chute was said distance from the cab window as it passed said chute; that said chute had for a long time, to-wit: for several years before the deceased was killed, come in collision with parts of the defendant's trains as they passed the same, and frequently knocked off markers from cars and collided with brake wheels attached thereto; that said defendant had notice of said facts, and that said chute was the distance aforesaid from said cab and track as they passed the same, long enough before the deceased was killed to have removed the same to a safe distance from the trains passing the same, and yet during all said time before and up to the time said deceased was killed, the defendant negligently failed to remove the same, but negligently maintained the same at said dangerous distance from said track and cabs as they passed the same; that the said cattle pens and chute could be seen for a distance of one-half mile or more along the track each side thereof; that when deceased was killed he was firing on said engine 169, which was then and there pulling a local freight train eastward over said rail-

road; that it became and was necessary to take a car then standing on said spur switch into said train, which was coupled onto said engine at the west end of said side track, and was being pulled out over said side track eastward and past said cattle chute at the time said deceased was killed, at the rate of about ten miles per hour; that while said train was so moving eastward over said side track, it became and was then and there the duty. of said deceased to lean out of said cab window on the north side of said cab, and look backward for signals and to see if everything was all right.

"And the said deceased was then and there at the time he was killed, carefully, and in the proper discharge of his duty, looking out of said window, and looking back for said signals, and to see if everything was all right at the time his head and part of his shoulders were partly inside said window and partly outside thereof, so that as he passed said chute his head came in collision with said cattle chute, whereby his skull was mashed in and broken and said deceased was killed; that he died within a few minutes after he so struck said cattle chute, and we, the jury further find that the board so nailed on the west side of the south end of said gate was longer up and down by the space of two inches than the said gate was wide, and that the upper end of said board was two inches higher than the upper edge of said upper board of said gate, and that said board was so placed upon the south end of said gate that the south edge thereof was from a half inch to one and one-half inches further south than the south end of said boards of said gate.

"That the top end of said board was further south than the lower end thereof by the space of one inch; that when said deceased was looking out for signals and to see if everything was right, as aforesaid, and as

he passed said cattle chute the back of his head struck the outer edge of said board so nailed across the south end of said gate, as aforesaid, by which collision he was killed, as aforesaid.

"That at the time said Ostman was employed as fireman on the defendant's road, to-wit: eighteen months prior to April 8, 1891, said defendant railroad company delivered to said Ostman, and said Ostman received and familiarized himself with its books and rules and instructions, and at the time of his injuries, on April 8, 1891, he knew and was familiar with the same.

"That there was in force on defendant's road, as shown by said book of rules and instructions, at the time of the employment of said Ostman, and continuously to a time subsequent to April 8, 1891, the following rules:

" 'First. All persons entering into or remaining in the service of this company, are warned that in accepting or obtaining employment they must assume the risk attending it. Each employe is expected and required to look after and be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows, to the public and to property, especially in switching cars and in all movements of trains.

" 'Second. Employes of every grade are warned to see for themselves before using them that the machiney or tools which they are expected to use are in the proper condition for the services required, and if not, to put them in proper condition, or see that they are so put before using them; also train and enginemen must familiarize themselves with the tracks and dangerous points upon the lines. The company does not wish or expect its employes to incur any risk whatever from which, by the exercise of their own judgment and by

personal care they could protect themselves, but enjoins upon them to take time in all cases to do their duty in safety, whether they may at the time be acting under orders of a superior or otherwise.

" 'Fourth. They must assist in keeping a constant lookout upon the track and must instantly give the enginemen notice of any obstruction or signal they may perceive.'

"And we futher find that said deceased did not know that said cattle chute was so close to said track, or to his cab as it passed the same, as to be dangerous to him, or that it would come into collision with him as he passed the same, and while he was discharging his duties as such fireman.

"And we, the jury, further find that said deceased was so injured and killed without any fault whatever on his part."

It is further found that the deceased was twenty-five years of age at the time of his death.

Appellant affirms that under the special findings of the jury that appellee was not entitled to a judgment, and this may be considered the principal question for our determination. The particular insistence is, that the facts as found by the jury do not establish actionable negligence against appellant, nor neither do they show absence of contributory negligence upon the part of the deceased servant at the time of the fatal accident. It is well settled by numerous decisions of this court that in actions of this character, whenever the plaintiff sues to recover upon the ground of negligence, it must be shown that the master was guilty of the negligence charged, and that the servant was free from the contributory negligence on his part, at the particular time of the alleged injury or death.

Neither of these essential factors can, to any extent, be presumed. The special verdict in the case at bar is

open to the objections that in some respects it con-
tains conclusions rather than the finding of facts es-
sential to the issues involved.

The theory of the verdict is, that the negligence to
be imputed to the appellant, under the facts em-
braced therein, is that of erecting and maintaining
the cattle chute in too close proximity to its side track.
There is nothing disclosed in the findings of the jury
going to show that the chute in question was not
built and maintained in the usual and proper place
for such buildings.   It is a matter of general knowl-
edge, that such chutes are necessary contrivances in
the operation of railroads, and that they must neces-
sarily be constructed close enough to the track where
used as will enable the company to load and unload
cattle without injury to the latter.   It would seem
that the correct standard by which the negligence of·
the railroad company ought to be measured when the
action is for an injury or death to one of its trainmen,
arising out of its alleged negligence in erecting or
maintaining a chute in too. close proximity to its
tracks is, that it must be, when so erected or main-
tained, dangerous or unsafe to persons operating its
trains when they are exercising, under the particular
circumstances, ordinary care.

In the case of *Gould, Admr.,* v. *Chicago, etc., R. W.
Co.,* 66 Ia. 590, 22 Am. and Eng. R. R. Cases, 289, 24
N. W. 227, an engineer was killed by being struck
upon the head by a "water crane," close to the track,
while in the act of leaning out of the "gangway" of
his engine, looking back for expected signals.   The
trial court charged the jury that, if they found from
the evidence that the water column was placed in
such close proximity to the track as to be dangerous
to persons operating the trains, they would be justified
in finding that the defendant was guilty of negli-

gence in the erection and location of the column. The court held that the giving of this instruction was error, and said: "It is not true that a railroad company is to be regarded as negligent in erecting or maintaining contrivances or things for use in the operation of their roads, for the reason that they are 'dangerous to the persons operating the trains.' Indeed, the whole business of operating trains is 'dangerous.' It is full of perils to those employed therein. Because there is danger, it does not follow that the companies are negligent as to the things from which the danger springs. The instruction should have expressed the thought that if the crane was dangerous to persons operating trains *in the exercise of ordinary care*, the defendant was negligent in constructing it."

The jury found that the part of the chute that struck the head of the plaintiff's intestate while he was looking out and back was "thirteen inches from the side of the cab at the window from where he was looking out; * * * that said distance made it extra hazardous for the deceased and other trainmen. That the deceased did not know or have any reason or opportunity to know that any part of said chute was within thirteen inches of said cab as it passed the same." The finding that this distance between the particular point of the chute that struck the head of the deceased and the side of the cab when it was passing the chute, rendered the same extra hazardous, is more in the nature of a conclusion than the finding of a material fact, and for this reason must be disregarded in determining the sufficiency of the special finding.

While we have asserted the general rule applicable to the test or question of the negligence of the company, when it is involved, as it is in the case under consideration, we may, however, pass without deciding whether the appellant was guilty of actionable neg-

ligence under the findings of the jury, as it does not appear, from the facts embraced in the verdict, that the deceased was himself free from contributory negligence at the time of the fatal accident. It is shown that before the time of the occurrence Ostman had been for sixteen months and over continually in the employment of the appellant as its fireman upon the same engine upon which he was at work when killed. That the chute in question was so conspicuous that it, and its location, could be seen for a distance of a half mile and more along the track and each side thereof. That during this period of time the deceased, in the discharge of his duties, passed the station where the chute was located, twice each week, and frequently did work and switching at this station. He was twenty-five years of age, of sufficient age and capacity by the use of his senses to see, appreciate, and comprehend obvious dangers and thereby avoid them. The finding that the deceased did not have an opportunity to know that the chute was in such close proximity to the side track, in consideration of the other facts, must be viewed more as a conclusion upon the part of the jury than a finding of a material fact. He was, as it appears, familiar with and understood the rules of the company, and one of these rules expressly provided: "Also trainmen and enginemen must familiarize themselves with the tracks and dangerous points upon the lines. The company does not wish or expect its employes to incur any risk whatever from which, by the exercise of their own judgment or by personal care they could protect themselves, *but enjoins upon them to take time in all cases to do their duty in safety, whether they may be at the time acting under orders of a superior or otherwise.*" (The italics are our own.)

Under this rule, deceased was required to familiarize

himself with the tracks and dangerous points upon the lines, and it was not incumbent upon him to incur any risk from which, by the exercise of judgment and care, he could protect himself. This chute was not located upon the main track, but on the switch or side track at Burr Oak. As the deceased frequently did switching at this station, he consequently must have frequently passed this chute on the side track while switching, and thereby had ample opportunities to learn and be apprised of its close proximity to the track, and the danger of passing the same in his cab when leaning out and looking in an opposite direction from the chute, as it appears he did, and what care was necessary to be exercised to escape injury therefrom when passing it. The fact that the jury found that he did not know, and could not know, of the hazard to which he would be subjected in passing the chute in the manner he did, at the time of his fatal injury, has no bearing upon the question of care upon his part. It is a finding which is antagonized by the specific facts disclosed by the verdict, and we must accept them as controlling under such circumstances. In addition to the duty resting upon the deceased to employ or exercise his senses while on duty, he, by the express provisions of the rule above set out, was admonished and enjoined to do so, and to take time and to exercise care to protect himself from danger.

It is urged by the appellee that the facts show that her decedent did not know what distance the part of the chute which struck him was from the passing engine. In answer to this it may be said that the means of knowing by ordinary care is evidence of knowledge. *McKee* v. *Chicago, etc., R. W. Co.*, 83 Ia. 616; *Pennsylvania Co.* v. *Finney*, 145 Ind. 551.

In the former case it was held that a railroad employe in going over the line of the railroad in the dis-

charge of his duties, will be presumed to have known from such opportunity that the distance between a wing fence and a passing car was such as to make it unsafe to swing out more than two feet from the car. In the latter case the alleged negligence was based upon the company having located and maintained a water crane in close proximity ·to its main track, whereby Finney, who was a brakeman in its service, was killed by being struck by the crane while descending from the car upon which he was braking. The employe in this case was twenty-two years of age, he had been in the service of the company for a period of six months, during which time he had passed the crane almost daily. It was held by this court that, under the facts in that case, the deceased was chargeable with contributory negligence. The court said: "Everything, as it appears, was open and visible to the decedent; he was a man twenty two years of age, and had he used his senses and faculties with which it is presumed nature had endowed him, · we think, he would have escaped the danger to which, it is contended, appellant had exposed him. The means which a person has of knowing that under the circumstances he will expose himself to peril, are deemed, in law, to be evidence of knowledge of that fact. *Muldowney* v. *Illinois, etc., R. W. Co.*, 39 Ia. 615; *McKee, Admr.*, v. *Chicago, etc., R. W. Co.*, 83 Ia. 616, 13 L. R. A. 817.

"In *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327, this court said: 'The law requires that men shall use the senses with which nature has endowed them, and when, without excuse, one fails to do so, and is injured in consequence, he alone must suffer the consequences.' See *Salem, etc., Stone Co.* v. *O'Brien*, 12 Ind. App. 217.

"In no case will the master be held liable to the

servant where the latter brings injury upon himself which he might have avoided by the exercise of reasonable care and prudence. *Pittsburgh, etc., R. W. Co. v. Adams*, 105 Ind. 151.''

The facts in the Finney case, *supra*, are similar in their character to those in this appeal, and the holding in that case is virtually decisive upon the question here involved.

In the case of the *Jenney Electric Light, etc., Co.* v. *Murphy*, 115 Ind. 566, it is said: '''An employe who knows, or by the exercise of ordinary diligence could know, of any defects or imperfections in the things about which he is employed, and continues in the service without objection, and without promise of change, *is presumed to have assumed* all the consequences resulting from such defects, and to have waived all right to recover for injuries caused thereby.''' (The italics are our own.) See *Lovejoy* v. *Boston, etc., R. R. Corp.*, 125 Mass. 79; *Brown* v. *Chicago, etc., R. W. Co.*, 69 Ia. 161, 28 N. W. 487.

We are of the opinion that, under the facts as they are disclosed by the finding in this case, knowledge of the hazard or danger to which it is claimed by the appellee that her intestate was subjected and exposed by reason of the location of the cattle chute and the manner in which it was maintained, must be imputed to him. It is not made to appear by any reasonable inference that may be drawn from the specific facts found, that there was freedom from contributory negligence upon the part of the deceased, at the time of the accident. The special verdict does not support the judgment.

The judgment of the lower court is therefore reversed, and the cause remanded, with instructions to

the court to vacate its judgment and render a judgment in favor of appellant upon the special verdict.

DISSENTING OPINION.

HOWARD, J.—I think that the facts found by the jury show that the company was negligent and that the deceased was free from contributory negligence, and must therefore dissent from the conclusion reached by the court.