HUGH PARKHILL, Appellee, v. BEKIN'S VAN & STORAGE COMPANY, Appellant.

**LIMITATION OF ACTIONS:** "Commencement" of Action—What
1 **Constitutes.** The actual service of an original notice of suit is the "commencement" of an action, and tolls the statute of limitation, even though the petition subsequently filed states the accrual of the action materially different than as stated in said notice, said petition stating a date such that, had no notice been served, the action would have been barred prior to the filing of the petition. (Secs. 3450, 3514, Code.)

PRINCIPLE APPLIED: In action for personal injury (barred in two years) an original notice was served November 24, 1913, which stated the date of injury as June, 1912, and referred defendant to the petition to be filed for farther particulars. A petition was duly filed December 26, 1913, which stated the date of the injury as December 15, 1911. Defendant voluntarily appeared January 5, 1914, answered on January 12, 1914, and amended on February 18, 1914, by pleading statute of limitation, claiming, in effect, that defendant was stating a different cause of action in the petition than as stated in the notice. Plaintiff made no claim that he had two causes of action. *Held,* (a) that it was unnecessary to state in the notice the date of the injury, and (b) having been stated, it need not be proven,—that the action was not barred.

**DAMAGES:** Personal Injuries—Hospital Expenses—Reasonable Value. One suing for personal injuries may properly show that he paid the amount charged for hospital services, evidence of the reasonable value thereof being later supplied.

**EVIDENCE:** Expert Opinion—Physician's Personal Examination— Hypothetical Question. As to the cause which might have brought about the condition of an injured person, a medical expert may give an opinion based on (a) his personal examination of the person and (b) a hypothetical statement of the facts.

**MASTER AND SERVANT:** Personal Injury—Knowledge of Defect— Instruction. Under an issue whether defendant was negligent in directing plaintiff to move a piano with a truck which defendant knew was broken, defective and unsafe, it is declared that ''if, in the exercise of reasonable care, defendant *should* have known of the defective condition of the truck, and without knowing or without using reasonable care to ascertain the condition of the truck, defendant directed plaintiff to use and move the piano with it, then defendant was negligent.'' Instruction in instant case held to be the equivalent of this statement of the law.

**MASTER AND SERVANT:** Personal Injury—Servant's Right to Presume Master's Performance of Duty. On the question whether the servant had exercised reasonable care, the jury may be told that the servant had the right to presume, in the absence of knowledge to the contrary, that the master had performed his duty to exercise reasonable care in furnishing the implements with which the servant was required to perform his work.

PRINCIPLE APPLIED: The servant's duty was to assist in the putting away and handling of goods in a storage house, and was supplied with trucks for that purpose. A piano fell upon him because the truck was defective. The manager directed him to use a certain truck. The servant asked the manager if he thought it safe. The manager ''got down'' and examined it where it was welded, and told the servant it was good and solid and to ''go ahead'' and use it. Servant did not know it was imprudent to use it. The truck broke where it had been welded, and the servant had theretofore seen this weld, but had seen no crack. He had nothing to do with selecting the truck or keeping it in repair. *Held*, above principle had proper application to the case. *Held*, servant was not guilty of contributory negligence *per se*.

**DAMAGES:** Recovery of Expenses ''Paid''—Inaccuracy Cured by Evidence. It is inaccurate, of course, to instruct that one may

recover his expenses "incurred," but such inaccuracy is non-prejudicial when the undisputed evidence shows such expenses to be reasonable in amount.

**APPEAL AND ERROR:**     Failure to Instruct on Issues—Waiver.
Error cannot be predicated on the failure to specifically instruct on the issue of assumption of risk when (a) defendant requested no such instruction, and (b), in its objections to the instructions as given, did not object to such failure. (Sec. 3705-a, Sup. Code, 1913.)   Especially is this true in view of Sec. 4999-a3, Sup. Code, 1913, abolishing assumption of risk in cases like instant one.

**MASTER AND SERVANT:**   Safe Tools—Repair—Ocular Inspection of Defect—Negligence.   Merely looking at or superficially inspecting the external conditions of an appliance or tool furnished the servant for the performance of work may not satisfy the full measure of the master's duty to furnish reasonably safe appliances, when the servant's safety depends upon the soundness of the material, the sufficiency of a repair, or the firmness of the separate parts of the appliance.

PRINCIPLE APPLIED:   (See No. 5.)

**TRIAL:**   Argument Aside Record—Rebuke by Court—Caution to Jury —Nonreversible Error.   Arguments aside the record are, of course, improper, but the action of the court in promptly rebuking such argument, with direct caution to the jury to disregard the same, has large curative power.   Court's refusal to grant new trial on this ground upheld.

PRINCIPLE APPLIED:   Counsel referred to the fact that the defendant was a corporation, which was well able to pay the damages, and that the plaintiff, after his injury, was refused employment by defendant, as to which latter statement it was claimed there was no evidence.   Rebuke by the court followed with caution to disregard the statements.   *Held*, not reversible error.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

TUESDAY, MARCH 16, 1915.

ACTION at law to recover damages for personal injuries received by plaintiff while in defendant's employ, due to the fact that defendant furnished plaintiff a defective truck with

which to work. Defendant denied the negligence charged, pleaded assumption of risk and contributory negligence, and also the statute of limitations. Upon the issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Sargent, Strong & Struble,* for appellant.

*Geo. W. Kephart, P. H. Konzen,* and *F. E. Gill,* for appellee.

DEEMER, C. J.—The first question which we shall determine arises upon defendant's answer pleading the statute of limitations. An original notice was placed in the hands of one Montgomery, who served the same upon the defendant on September 24, 1913. In this notice, it was stated that a petition would be on file on or before December 26th of the same year, claiming damages by reason of an injury received by plaintiff during the month of June, 1912, due to the defendant's negligence. The notice also stated: "For further particulars, see petition which will be placed on file. . . ." The defendant was notified to appear at the next January term of court, commencing on the 5th day of January of the year 1914. A petition was filed on December 26, 1913, and therein plaintiff charged that his injuries were received on December 15, 1911. On January 5, 1914, defendant appeared; and on the 12th day of the same year, it filed an answer. On the 18th day of February of the same year, it filed an amendment to its answer, pleading the statute of limitations. Such actions as this are barred by statute when not commenced within two years from the time the cause thereof accrued. Code Sec. 3447, Par. 3. The petition, which must govern, states that the cause of action accrued on December 15, 1911, so that it must have been commenced on or before December 15th of the year 1913. The petition was not filed, and defendant did not appear until after the statute had run; but

1. LIMITATION OF ACTIONS: "commencement" of action: what constitutes.

the original notice was served on November 24th of that year, and this was in time.   Ordinarily, in this state, an action is commenced by the service of an original notice.   Code Sec. 3514.

Defendant insists, however, that the notice served in this case was of another cause of action, to wit, one occurring in June of the year, 1912, and that this was not the commencement of the present action.   The proposition is plausible, but not tenable.   True, the original notice stated that the injury occurred in June of the year 1912, but this was not a material part of the notice; and in the instant case, the defendant's attention was not only called to the petition itself, which was to be forthcoming, but it responded thereto, and entered a voluntary appearance to the action.   If the notice was not of this action, then it has no place in the record; and as the date of the accident need not be stated in the notice, or if stated, need not be proved, a mistake therein which does not in any way mislead is to be disregarded.   Plaintiff has at no time claimed that he had two causes of action; and the only one he presented was the one stated in his petition.   Manifestly, he was mistaken in fixing the date in his original notice, but this was corrected in the petition, if it needed correction, and no possible prejudice resulted to the defendant.   There is no merit in defendant's plea, and the court properly disregarded it.

I. Plaintiff was in defendant's employ as a common laborer, whose duties were to check goods as they came into and went out of defendant's storage house, to assist in putting them away for storage and to take them from one floor to another by the use of an elevator.   He received his orders from S. P. Bekin, defendant's manager, and was supplied with trucks for the purpose of moving goods.   He had been at work some four years before the accident occurred, but testified that never before had he moved pianos until the time the accident occurred.   He was directed, on the day in question, to move a player piano, which was encased in a box, from the floor where it then was to an upper one, and he asked the

manager what truck to use, and was directed by him to get the long one, for the reason that it could be more easily balanced on that one. We here quote from the record as follows:

"I said, 'Do you think it is safe to carry that extra heavy piano?' He got on his knee and looked at it, and said: 'Yes.' I said: 'Do you see the weld on it?' and he said, 'Yes.' I said, 'Do you think it is safe?' and he said, 'Yes.' I thought it was all right and I used it. This truck was in the storage house when I went there. At that time it was broken and out of commission. He had on wooden cross pieces, and this bit welded. The bit is the front iron. The bit sticks up in front of the handle, and it has two wheels below. This bit stands on two irons, one piece of iron under it, and this piece was broke. There were five trucks in use there all together. This was the largest one of the five. Two of those trucks were about three feet long; you couldn't use them even on a big box. There were two a little longer and one was extra long, probably six inches longer than the other two. That was the one I used on this occasion. The next largest truck had a broken leg and couldn't be used. It was my custom, under the order of the foreman there, to move heavy articles of this kind around the storage room on trucks.

"Q. Now, Mr. Bekin directed you to use this truck; and you say that he got down on his knee and examined it? A. Yes, sir. Q. And what did he say? A. He said the truck was all right; to go ahead and take it up. Q. And he ordered you to go ahead? A. Yes, sir. After Mr. Bekin examined the truck, he said: 'That is all right; go ahead and take it up there.' I had no means of knowing how much weight this truck would carry. I never moved an article as heavy as this piano on this truck. We put the bit under one end of the piano and bore down on the handle; that brings the piano up four or five inches off of the floor. One man gets straddle of the truck and holds it, while the other gets it further underneath until we get the piano balanced. I had the handles of

the truck. After I got the piano on the truck, I set three or four inches back of the handles. The purpose in moving it that far back is to get it to balance on the bit. After we got the piano on, I started to move it; just started to swing around; I had my shoulder on the end, and my head on the back side of it and pushing, and as I tried to swing it, the bit broke and it came onto my shoulder, and I felt something give in my rectum. In the meantime I told Johnson to 'let down quick, I am hurt,' and Johnson grabbed it and got it up so that I could raise my hands and let loose, and then I sat down on some barrels and I didn't know anything for some time after that; I became unconscious. I was pushing this piano ahead of me. I had to turn it to get it out of the alleyway; I was turning to the left. I was stooped over with my hands near the floor and my legs about six or ten inches apart and my hands were within ten inches of the floor. There was not a great deal of weight on the handles because the piano was balanced. I had my head and shoulders against the corner of the piano because you do your pushing with your shoulders and you have to have your head on one side to see where you are going. Mr. Johnson was at the other end of the piano. He had one hand against it to steady it. The floor there was pretty holey. The bit of the truck broke. The piano tipped toward the back and that is the corner at which I had my head and shoulders. The weight of the piano came against me with a sudden chug. When the weight of the piano came against me, I felt something snap in my rectum. I examined the truck afterwards to see where it was broken. It was broken where this weld was, that Mr. Bekin had examined. I should judge that the weld was 2½ or 3 inches long, and this bit was welded about half way through. The other iron came together, but was not welded, just about half had been stuck; about half had not been welded together. There was a crack left there at that weld. A little piece of it happened to stick. I could see where the new iron stuck, and the other was rusted and black. When Mr. Bekin examined

the truck he said, 'There is a weld there, but it is good and
solid.' After the piano fell over on me I raised my hand and
told Mr. Johnson that I was hurt, and to let it down quick.
He grabbed it and held it and I raised my hands and got
it off. I sat down on some soda barrels then and became un-
conscious; I do not know how long I remained unconscious.

"Frequently my helper and myself handled pianos and
moved them from one place to the other in the storage house
as they came in, and have moved them and placed them on the
elevator and up on the other floors. That was true during
all the time while I was there in moving pianos and things
of heavy character that we could not roll by hand. We had
not moved a piano player in a box such as this before on a
truck. This piano player is just the same as a piano with an
attachment inside that operates the piano, but it is much
heavier; it has the same appearance.

"I had noticed something the matter with this truck;
that is, I had noticed the weld in the bit. This bit is a sort
of an iron turned up. It is a kind of an iron out from the
end of the beam. When I picked this out I saw where it
had been welded. I did not see any crack. I always asked
him about heavy weights. I have always asked about heavy
weights, whether it would hold or not, at different times. I
could not see whether anything was the matter with the weld
or not; it was not possible to discover whether anything was
the matter with it where I stood, but where he stood he might.
I was standing up and he went down on his knees. I did not
call his attention to the particular thing I wanted him to
look at. I said, 'Do you think it is strong enough to take
it up on?' "

Another witness testified as follows:

"Q. Did you hear Mr. Bekin order Mr. Parkhill that
morning to use this particular truck? A. He asked Mr.
Parkhill what truck we would use, it is an awful heavy piano,
and what truck we would use. This truck here had the legs

broken off, and we could not use it, and center piece there that was broken off, and the legs were broken off on this here truck, this truck was disabled at that time. Q. Tell what Mr. Bekin ordered Mr. Parkhill to do. A. Parkhill asked which truck we should put it on, which he thought was strong enough. He said, 'Take that truck over there.' That was the other truck that we did use. He says, 'Do you think that is strong enough to take and hold it?' Q. Who said that? A. Mr. Parkhill asked Bekin if he thought it was strong enough, and he stooped down and examined it. Q. Who did? A. Mr. Bekin examined the truck that morning. Q. How did he examine it? A. He got on his knees, he got on one knee and looked at it like this here (indicating). I was standing right there and Parkhill was like that. And this welding here, I called his attention to it and asked if he thought that was strong enough to hold that, and he said, 'Yes, take it and go ahead, it is all right.' The bit on the truck was welded on the left side. I called Mr. Bekin's attention to that at the time he was looking at it. I said, 'Do you think it is welded strong enough, do you think that it is all right in there?' and he said, 'Yes, that is all right. You go ahead with it; that will be all right, that is all right.' I said, 'It don't look like it is welded enough,' and he said, 'You can see the lap.' But it didn't look like it was welded tight on this lap. On the other truck you could see where it has been fixed since. After it broke I could see where it had been welded. It was what was known as a lap weld. Q. State whether or not when you called Mr. Bekin's attention to that weld there that morning there was any indication of it being open? A. It was open. I called his attention to it. It was open. The weld on the outside was open, on the left side was open, but on the inside it was welded, on the inside it was welded about half an inch, and this here flaw opened up like this here. After the injury I examined the truck again. I found the truck where it was only welded not over probably half an inch to the outside, it was not welded on the outside at all. All that was

welded was probably a quarter of an inch, about half an inch on the outside of the piece."

The negligence charged in the petition was:

"That the defendant was careless and negligent in directing plaintiff to move said piano with a truck which it well knew was broken and defective and not safe for use in moving a heavy piano. That the defendant was careless and negligent in failing to furnish sufficient help to assist plaintiff in moving said piano."

The trial court withdrew from the jury the charge that defendant was negligent in not furnishing plaintiff sufficient assistance in moving the piano, but submitted the other charge to the jury, resulting in the verdict and judgment already stated. Many rulings are complained of, but they may be grouped under three or four principal heads, to wit: Errors in the admission and rejection of testimony, errors in the instructions, misconduct of plaintiff's counsel in argument, and insufficiency of the testimony to support the verdict.

II. Over defendant's objections, plaintiff was permitted to prove the amount paid by him to the hospital; it being the amount charged by the hospital, to wit, $25 to $30. While this was not the true measure of recovery, it

2. DAMAGES: personal injuries: hospital expenses: reasonable value.

was proper to show that he paid the bill. By another witness, plaintiff proved that this was the regular and reasonable charge at that hospital and there was no error. By another witness, who rendered the service, plaintiff was permitted to show that he paid him the sum of $125.00 for medical services, and that this was a reasonable value of his services. There was no error here. The same observation may be made regarding the testimony of another medical witness.

Certain rulings made on the cross-examination of one of plaintiff's witnesses are complained of. We have examined them and find no error. The witness was permitted to answer all relevant and material questions propounded to him. Sev-

eral doctors were permitted to answer hypothetical questions propounded to them, and this is said to be error because the questions assumed facts not proved or admitted of record. These too have been examined in the light of the argument, and nothing was assumed in the interrogations which was not supported by some testimony or some legitimate inference therefrom, and there was no error here.

Medical experts who examined the plaintiff were permitted, upon a hypothetical statement of the facts and their personal examination of the plaintiff, to give their opinion as to what might have caused his condition as they found him. In this there was no error. Of course, if the expert has made no physical examination, his opinion must be based wholly upon the facts assumed in the question; but assuming his competency, if he has made a personal examination of his patient, he may from that examination, aided by a proper hypothetical question, give his opinion as to what might have produced the injury. *Vannest v. Murphy,* 135 Iowa 123, does not hold to the contrary. What is there said had reference to the opinion of a non-expert.

3. EVIDENCE: expert opinion: physician's personal examination: hypothetical question.

III. The trial court gave the following, among other instructions:

"If you find from the evidence introduced in this case that the truck was defective, and was not a reasonably safe instrument with which to move the piano; and you further find that the defendant knew, or in the exercise of reasonable care and diligence should have known that said truck was defective and an unsafe instrument with which to move the piano; *and without knowing or without using reasonable care to ascertain the condition of said truck, the defendant's manager directed the plaintiff to move the piano with said truck,* then you should find that the defendant was negligent in the particulars charged. But if you find that the defendant used reasonable care in furnishing the plaintiff with a truck; and

4. MASTER AND SERVANT: personal injury: knowledge of defect: instruction.

the truck was defective by reason of hidden blemish which the defendant could not have discovered, in the exercise of reasonable care, and if he did use reasonable care in ascertaining the condition of said truck, and had no knowledge that the same was defective, then you should find that the defendant was not negligent, and your verdict should be for the defendant. Or if you find from the evidence that the defendant did not direct the plaintiff to move said piano with a truck, but that plaintiff proceeded to use the truck in moving the piano without directions from the defendant, or anyone in its employ, then the plaintiff cannot recover in this action, and your verdict should be for the defendant.''

The italicised part of this instruction is complained of. It is not entirely clear; but taken in connection with the entire instruction, as it should be, it was not, as we think, erroneous. The thought of the trial court evidently was that if, in the exercise of reasonable care and diligence, defendant should have known of the defective condition of the truck, and it, without knowing or without using reasonable care to ascertain the condition of the truck, directed the plaintiff to use and move the piano with it, then defendant was guilty of negligence. So construed, there was not error. The counter part of the proposition is embodied in what follows, and a jury could not have been misled by the words chosen, in any event.

IV. The seventh instruction given by the trial court reads as follows:

''If you find that the defendant was negligent in directing the plaintiff to move the piano with a defective truck, you will next proceed to determine whether or not the plaintiff has shown by a preponderance of the evidence that he himself was free from negligence contributing to his injury, and you are instructed that plaintiff cannot recover unless he has shown to you by preponderance of the evidence that he himself was free from negligence contributing

5. MASTER AND SERVANT: personal injury: servant's right to presume master's performance of duty.

to his injury. It was the duty of the plaintiff in performing his work to give reasonable attention to the implements with which he was required to work in the discharge of his duty. He was not entitled to voluntarily expose himself to a danger of which he had knowledge, or might have known by the exercise of reasonable and ordinary care. And if he knew that the truck in question was defective, or should have known it was defective, in the exercise of reasonable care, and he did not exercise ordinary care for his own safety in using the truck, then he cannot recover. *But in determining the question as to whether in using the truck the plaintiff was in the exercise of reasonable care, you are instructed that he had a right to presume, in the absence of knowledge to the contrary, that the defendant had performed its duty and exercised reasonable care in furnishing the implement with which he was required to work.* In determining whether or not the plaintiff was in the exercise of reasonable care in using said truck, you may take into consideration the evidence as to the length of time the plaintiff was employed in the warehouse, the knowledge or means of knowledge he had of the condition of the truck; the direction, if any, he had from the defendant to use the truck, and all other facts shown by the evidence bearing on the question of his exercise of reasonable care, and therefrom determine whether or not the plaintiff, at the time of the injury complained of, was in the exercise of reasonable care."

The italicised part of this instruction is also complained of. In view of the facts as shown by the record, regarding defendant's duty to supply proper appliances and keep them in repair, the question made by plaintiff regarding the condition and safety of the truck given him, the examination made of the truck by the defendant's manager, his assurance to the plaintiff that the truck was all right, and his direction to the plaintiff to use it for the particular purpose then in view, there was no error in this part of the instruction criticised.

V. In the ninth instruction the court said, in part:

"If you find for the plaintiff you are instructed that he can only recover for such injuries, if any, as the evidence shows are the proximate result of the negligence complained of; he is entitled to recover for the expense for doctors' bills and hospital bills, if any, necessarily incurred by him as a result of said accident, not exceeding the amount claimed therefor in the petition."

6. DAMAGES: recovery of expenses "paid": inaccuracy cured by evidence.

This is said to be erroneous, in that it announces an incorrect rule as to the measure of damages. It is not exactly accurate, but in view of the undisputed testimony that these expenses were reasonable, there was no prejudicial error. *Flanagan v. R. R. Co.*, 83 Iowa 639; *Sachra v. Town*, 120 Iowa 562.

VI. Although defendant pleaded assumption of risk by plaintiff in using the truck in question, with knowledge of the hazard involved in its use, the trial court did not expressly cover that point in its instructions. The defendant asked no instruction with reference to this matter, and in its objections to the instructions as given, did not cover the proposition. For these reasons alone, appellant is not now entitled to complain. Moreover, the case seems to be ruled by Chapter 219, Acts of 33d G. A., which eliminates the doctrine of assumption of risk where the employer, because of his duty to an employee, furnishes appliances which are defective or out of repair. The case does not fall within any of the exceptions noted in this statute.

7. APPEAL AND ERROR: failure to instruct on issues: waiver.

VII. Defendant stoutly contends that there is no testimony as to any negligence on its part and that the testimony shows plaintiff was guilty of contributory negligence as a matter of law, and that there should have been no recovery in any event. It was defendant's duty to use reasonable care in furnishing plaintiff with proper appliances with which to work, and to use reasonable care in keeping the same

8. MASTER AND SERVANT: safe tools: repair: ocular inspection of defect: negligence.

in repair and condition for the use intended. Plaintiff had nothing to do with the selection or repair of the truck and was justified in relying upon what the manager told him regarding the truck and as to its being a proper and sufficient appliance with which to do the work required of him. Defendant's manager undertook to look the truck over, and after making a somewhat superficial examination, assured plaintiff that the truck was safe and a proper appliance, and directed him to use it. Plaintiff had the right to rely on this assurance and direction, unless he knew that the truck was unsafe, and that it was hazardous and imprudent for him to work with it. In such circumstances, plaintiff was not guilty of contributory negligence as a matter of law. Whether he was in fact guilty of such negligence was a question for the jury, and they found that the plaintiff was not guilty. We should not interfere with this finding. *Lamb v. Wagner,* 155 Iowa 400; *Klaffke v. Axle Co.,* 125 Iowa 224; *Bell v. Axle Co.,* 146 Iowa 337; *Kroeger v. Bridge Co.,* 138 Iowa 376.

On the question of defendant's negligence, it was a question for the jury to say whether or not defendant's manager, Bekin, used proper care in the repair, selection, and inspection of the truck before directing plaintiff to use it for the purposes intended. The trial court so instructed the jury, and we are not justified in interfering with its verdict. It is not a case where an employer has furnished proper tools and the employee has made a selection of his own, or one where the employee undertook himself to inspect the particular appliance, or a case of selection of a proper tool by the employee, but one where the master assumed all these responsibilities. The case is in some respects like *Luisi v. R. R. Co.,* 155 Iowa 458; *McGuire v. Mill Co.,* 137 Iowa 447; *Anderson v. R. R. Co.,* 109 Iowa 524, and is ruled in this respect by the doctrines there announced. The truck furnished in this case was not a simple appliance, as a hammer, a saw, or an ordinary hatchet, and defendant was required to use at least ordinary care in keeping it in repair, and in inspecting the same from time to

time. *Gould v. R. R. Co.*, 66 Iowa 590; *Lynn v. Glucose Co.*, 128 Iowa 501. Whether or not it used that care was a question for the jury. Mere visual or ocular inspection of external conditions may not satisfy the full measure of the master's obligation, where the servant's safety depends upon the soundness of the materials, the sufficiency or adequacy of a repair or firmness of the separate parts of the appliance. See 1 Labatt on Master and Servant, (Ed. of 1904) Sec. 161, and cases cited.

VIII. During the argument of the case to the jury, the following record was made:

"By Mr. Struble: Counsel for plaintiff, in his opening argument, has just stated to the jury: 'We must remember in this case, gentlemen, that we are not dealing with an individual, but with a corporation, which is a creature of the law.' To that line of argument, and statement that counsel has been making, the defendant objects as improper argument and tending to create prejudice, and not based on any testimony in the case, and made for the purpose, if possible, to create a prejudice in the minds of the jury.

9. TRIAL: argument aside record: rebuke by court: caution to jury: non-reversible error.

"By the Court: The court rules that a corporation has the same rights as an individual, and any remarks that would lead the jury to prejudice are improper and the jury is instructed not to consider them. The mere fact that the defendant is a corporation may be stated to the jury.

"By Mr. Konzen: I do not see why the jury would not have the right to draw that distinction.

"By the Court: If he tried to distinguish between a corporation and individual before the jury there is danger in it. A corporation has the same rights as an individual.

"By Mr. Konzen: The court holds I may refer to the corporation, but not to the prejudice of the defendant?

"By the Court: Yes, sir.

"By Mr. Struble: You may note an exception.

"By Mr. Konzen: Then after the operation he goes back and gets in shape to do anything. Faithful old servant he is, he thinks perhaps that they need him down there and he will report for duty. What does he find? He is turned out in the cold like a disabled horse you don't want any more into the highway.

"By Mr. Struble: Is there any testimony of that kind in this case?

"Mr. Konzen: I think so.

"By Mr. Struble: About going down and being turned away in the cold.

"By Mr. Konzen: They refused to employ him.

"By Mr. Struble: There is no testimony of that kind in the case.

"By Mr. Konzen: He said that he went down to ask for his job and did not get it. I don't want to get outside of the record."

Mr. Konzen, continuing his argument further, said:

"There is one consolation if you find for the plaintiff, then you assess the damages, and the burden will fall on shoulders that are well able to stand it.

"By Mr. Struble: We object to this argument as incompetent, immaterial, prejudicial and improper argument.

"By the Court: The objection is sustained and the jury instructed not to pay attention to it, and the attorney cautioned not to argue in that line any more."

Whilst counsel overstepped the bounds in some of these statements, the court immediately rebuked him and cautioned the jury not to consider the improper statements. They were not such as were likely to influence the jury and we are not prepared to say that the trial court abused its discretion in refusing to grant the motion for a new trial on this ground. *Swanson v. R. R. Co.*, 153 Iowa 78; *Wissler v. City*, 123 Iowa 11.

IX. The last and only other proposition we shall consider is the claim that the verdict is excessive. Plaintiff was about 52 years old at the time he claims to have received his injuries, and he was earning $70.00 per month. Since that, he has not earned more than $24.00 per month. Before the accident, he was sound in body; but since that, he has been under the constant care of physicians. He has had at least one operation. He complains of pain in the spine and his doctors say that he has a fistula of the rectum, internal hemorrhoids, and that this condition is permanent. Some of the doctors say that he has or had prolapsus of the rectum with hemorrhoids and a fistula, and all say that he is not likely to be cured. They further say that this condition might have been caused by the injury which he received. This testimony was contradicted by other experts for the defendant, who left in much doubt the question as to whether plaintiff's injuries are as severe as he claims, and as to whether or not his injuries could have resulted from the accident; but this conflict among the medical men made a case for the jury, and while, if the damages depended upon plaintiff's loss of time and impairment of earning capacity, we should have no hesitation in saying that they are excessive, yet as the question of his pain and suffering, past, present, and prospective, is involved, we are not justified in reducing the verdict, although we may entertain doubt as to whether the conditions now existing are due to the accident.

Finding no prejudicial error in the record, the judgment must be, and it is,—*Affirmed.*

LADD, EVANS and PRESTON, JJ., concur.