RICHARD ROLFS, Administrator, Appellant, v. T. L. MULLINS, Appellee.

**APPEAL AND ERROR:** Harmless Error—Exclusion of Evidence—
1  Ordinances Declaratory of Common Law. The exclusion of an ordinance which is simply declaratory of the common law cannot be prejudicial.

**APPEAL AND ERROR:** Parties Entitled to Allege Error—Non-
2  responsive Answer—Acquiescence. The presence of nonresponsive answers in the record may not be made the basis of error when complainant made no effort to clear the record of such objectionable matter.

**NEGLIGENCE:** Acts or Omissions Constituting—Use of High-
3  ways—Looking and Listening—Negligence Per Se and in Fact Distinguished. While a person may not, under given circum-

stances, and in order to escape the charge of negligence, be under any duty, *as a matter of law*, to look and listen for vehicles which may be approaching in a public highway, yet the jury may very properly find that such person, *as a matter of fact*, was negligent because he did not look and listen.

**HIGHWAYS:** Use of Highways—Vehicles and Pedestrians—Relative Rights. Principle recognized that the relative rights of vehicles and pedestrians in the public highways are equal, save as otherwise declared by statute, etc.

**HIGHWAYS:** Use of Highways—Vehicles and Pedestrians—Right of Precedence. An ordinance providing that "pedestrians are given the right of way over crossings at street intersections" is no legal authorization to such pedestrian, in crossing streets, to remain oblivious to all surroundings. A legal paraphrase of such ordinance is: A pedestrian is entitled to the first use of a street crossing, and it is the duty of the driver of a vehicle to give the pedestrian reasonable opportunity to exercise such right, *when the pedestrian and the vehicle are moving in different directions and approach such crossing at the same time or in such manner that if both continue their respective courses there is danger of a collision.*

**NEGLIGENCE:** Evidence—Sufficiency to Create Jury Question— Automobile Collision. Evidence reviewed, and held to present a jury question whether defendant was negligent in the operation of his automobile which killed deceased.

**APPEAL AND ERROR:** Persons Entitled to Allege Error—Rejection of Evidence—Curing Error. Error in the rejection of evidence is cured by the subsequent reception of the same evidence.

*Appeal from Dallas District Court.*—J. H. APPLEGATE, Judge.

MONDAY, MAY 14, 1917.

ACTION for damages consequent on the death of Helen Rolfs, caused by a collision with defendant's automobile. From judgment for defendant, the plaintiff appeals.—*Affirmed.*

*George Wambach* and *Dingwell & Clarke,* for appellant.

*White & Clark* and *Hunn & Jones,* for appellee.

LADD, J.—High Street in Des Moines, running east and west, intersects Twelfth Street. Each street is 66 feet wide. There is a jog in Twelfth Street at the intersection, so that the east line of the street, north of High Street, is slightly east of the north end of the west line thereof south of High Street. It extends north and south from High Street. High Street curves considerably to the southeast at the intersection and about 200 feet east, so that the south curb of High Street east of Twelfth Street is 21 feet north of the south line of High Street west of Twelfth Street, and the distance between the curbs is 40 feet. Double street car tracks from the south on Twelfth Street turn to the west on High Street, and between the outsides of the outside rails, the distance is 14.6 feet. On High Street, west of the northwest corner of the intersection, the curbing is 16 feet from the street lines on each side, and the curb on the north is 9.8 feet from the street railway, and that on the south, 9.6 feet therefrom. The curb from the east swings in 4.5 feet at the north, and on the south, 4 feet, so that the space on the south side was 13.6 feet for about 19 feet west of the northeast corner of the Normandy Apartments, on the south line of High Street and west of west line of Twelfth Street, save for the curve of the railroad tracks in turning, when they come 8½ feet from the south curb. A drug store is located at the northwest corner, and dwellings at the northeast and southeast corners. An electric incandescent light was at the northeast corner, a light in front of the apartments, and a small gas electrolier at the northwest corner, operated from the drug store.

In the evening of November 25, 1914, shortly before 9 o'clock, Richard Rolfs and his wife, the decedent, walked east on the north side of High Street to the Twelfth Street intersection, and, as a street car was coming from the south at about the middle of the block, they crossed Twelfth Street and turned on a driveway a little farther on into the

street, and, when 12 or 15 feet from the south curbing, were struck by the defendant's car coming from the west. It had slowed down as the street car turned on High Street, and then crossed the tracks. Decedent died about three hours later, because of injuries received. The grounds of negligence alleged are: (1) Excessive speed of the car; (2) failure to give warning; (3) omission of lights; (4) not having car under control; and (5) excessively loading the car. The last ground was withdrawn from the jury because of not being sustained by the evidence.

**1. APPEAL AND ERROR: harmless error: exclusion of evidence: ordinances declaratory of common law.**

I. The plaintiff offered in evidence a city ordinance in six sections, and, on objection as irrelevant and immaterial, three of the sections were excluded. Exception is taken to the exclusion of the sixth only. Counsel concede that it merely embodied common-law rules, and we hold that, if so, there was no prejudice in its exclusion.

**2. APPEAL AND ERROR: parties entitled to allege error: nonresponsive answer: acquiescence.**

II. One Finane testified that he made an observation September 12, 1915, "under conditions of light as they were that evening," as to how far he could see an automobile from the east line of Twelfth Street and south curb of High Street, and, over objection, said he would say about two blocks. On further examination, he was unable to say whether "the conditions at the time I made these observations were different from what they were on the night of the accident as to lightness or darkness. I don't recall that it was lighter or darker than it was that evening." A motion to strike his testimony from the record was renewed and sustained, the court saying:

"I think, with no more of an examination than has been made, that will have to be sustained. It has not been shown whether the car was lighted up when he saw it or anything about it."

Defendant: "Q. Did you observe the headlight of the approaching car on that side of the street? (Plaintiff objects as incompetent and immaterial. Overruled, and plaintiff excepts.) A. Yes, sir. I could see the headlight two blocks."

The last question was not open to the objections interposed, for its purpose was to show similarity of conditions at the different times. The answer, "Yes, sir," did not reinstate the stricken testimony, and the remainder of the answer was not responsive to the inquiry, and, if not agreeable to plaintiff, objection thereto should have been interposed by motion to strike. Not having so done, he is not in a situation to complain.

III. Evidence was received, over objec-

3. NEGLIGENCE: acts or omissions constituting: use of highways: looking and listening: negligence *per se* and in fact distinguished.

tion, that a person from the east side of Twelfth Street and 12 or 15 feet north of the curb, under conditions as of the time in question, could see an automobile in High Street, two blocks west. This evidence was admissible as tending to illustrate the situation as bearing on the issue of whether decedent was in the exercise of ordinary care, the administrator of her estate having testified that, as they were crossing the street, she looked in that direction, and did not see anything approaching from that direction. This is not questioned by appellant, but he contends that decedent, in crossing the street, was not bound to look or listen for approaching automobiles. Neither *Mosso v. Stanton Co.*, 85 Wash. 499 (148 Pac. 594), nor *Johnson v. Scott*, 119 Minn. 470 (138 N. W. 694), on which appellant relies, touches the point. She was bound to exercise ordinary care for her own protection, and whether she did so was left an open issue for the jury. When the street car was about a half block down Twelfth Street, coming north, she crossed Twelfth Street to the northeast corner of the intersection, and from there, ac-

cording to her husband, walked on to the east 50 or 60 feet, and then turned down a private driveway into the street.

"Q. Before you went into the street at that particular place, what did you and your wife do? A. My wife was looking west and I was looking east."

The witness testified that neither saw anything; that, when they had reached the northeast corner of the intersection, the street car was beginning to turn. According to the witness, then, he and decedent must have walked 50 or 60 feet from the northeast corner of the intersection after the street car began to turn, and then to the place of collision, while the street car was moving far enough to enable defendant to drive his car through and reach the same place. Had she looked west before stepping into the street, would she not have seen the car? If her vision was obstructed by the street car, ought she not, in view of the condition of the street with reference to being lighted, to have looked again to ascertain if any vehicle might not be approaching from beyond? We do not say that she should have done so, but do say that whether, in the exercise of ordinary care in view of the direction she was crossing, she should have done so, was for the jury to determine. The automobile had the same right that she did to the use of the street. The relative rights of vehicles and pedestrians in the public streets are equal—one has no **4. Highways: use of highways: vehicles and pedestrians: relative rights.** rights superior to the other, save as declared by statute or ordinance, and each is obliged to act with due regard to the movements of others entitled to be on the street. Neither is called upon to anticipate negligence on the part of the other. It is no more the duty of the driver of vehicles to continually look out for pedestrians than of the latter to look out for vehicles. No pedestrian has a right to pass over a public thoroughfare without regard to approaching

vehicles, nor has any vehicle driver a right to appropriate
the public street without regard to its use by pedestrians.
The test to be applied in this case, as in others, is: What
would a person of ordinary prudence have done under the
circumstances shown? Would reasonable minds differ in
answering that question? Some are more cautious than
others, and, though some would hesitate to start without
looking up and down the street and keeping a continuous
lookout for approaching vehicles, others are content with
a glance about, and immediately proceed. We sometimes
think the latter class are less likely to be injured than the
former! At any rate, the law does not lay down precisely
what must be done to constitute due care, or omitted to ren-
der a person negligent. This depends on the facts of each
particular case, and in this cause, conditions were such as
to carry to the jury the issue as to whether decedent was at
fault in any respect. The law with reference to the use of
streets, as stated, is so well settled that citation seems un-
necessary; but see *Wine v. Jones,* decided at the last term;
*Grier v. Samuel,* (Del.) 86 Atl. 209; *Deputy v. Kimmell*
(W. Va.) 51 L. R. A. (N. S.) 989; *Niosi v. Empire Steam
Laundry,* (Cal.) 49 Pac. 185.

5. HIGHWAYS:
use of
highways:
vehicles and
pedestrians:
right of pre-
cedence.

IV. Appellant appears to rely some-
what on a portion of Section 3 of a city or-
dinance, which reads:

"Pedestrians are hereby given the right
of way over crossings at street intersec-
tions."

But this in no wise impairs the duty of pedestrians to
exercise ordinary care to avoid collisions with vehicles. It
means no more than "that, when two or more persons mov-
ing in different directions approach a crossing at the same
time, or in such manner that, if both or all continue their
respective courses, there is danger of collision, then the one
having the preference is entitled to the first use of such

crossing and it is the duty of others to give him reasonable opportunity to do so." (*Switzer v. Baker,* 178 Iowa 1063.)

The instructions were in accord with what was said in that case, and, of course, inconsistent with the notion that one may cross the street oblivious of surroundings. Conditions were such that the jury might have found that, had decedent looked to the west, she saw the approaching automobile, or that she did not look, and, in either event, that she was at fault,—that is, such conclusion was open to the jury.

6. NEGLIGENCE: evidence: sufficiency to create jury question: automobile collision.

V. Appellant contends that the evidence conclusively established negligence on the part of defendant. The night, but for the artificial lights, was dark. The defendant, in coming from the west, slowed his car down at the southwest corner of the intersection to allow the street car to proceed, and, as soon as there was room, moved in a somewhat south of east direction. When about half way over the tracks, he noticed an automobile standing next to the south curbing on High Street, and steered his car directly east. At the same time, he observed a car coming from the north, and the lights· of another coming from the south. Defendant testified that, when he first saw decedent and her husband, they were about 12 feet north of the south curbing of High Street, and 3, 4 or 5 feet east of the sidewalk line; that his lights were brilliant; that he first heard them talking and saw them about 3 feet from his car a little to the northeast, moving over toward it, and immediately put on the brakes and threw out the clutch, thereby stopping the car within a few feet. He was asked to explain why he "did not see these people in the center of the street at that time," and answered, "I could not explain at that time. The lights did not show where they were." He swore further that he did not no-

tice the street lights that night; that he had been there when conditions were as on that night; and was asked:

"What is the fact as to whether or not you can see persons passing along the sidewalk east of the north side on High Street from the crossing? A. No, sir. Q. And what is the fact as to the conditions of its lightness or darkness south of the curbing and extending down to the street? A. It is dark in there."

His testimony was corroborated by that of others in the car. He and other witnesses estimated that the car was moving, immediately previous to the collision, from 6 to 7 miles an hour. As the evidence must be viewed in the light most favorable to defendant, in determining whether it conclusively established negligence on his part, it is unnecessary to notice any that may be conflicting with that to which attention has been directed. We are of opinion that an issue was fairly raised for the jury. They might have found that warning was given, that the lights were burning, and that the car was under control. The best test of control, as contended by appellant, is ability to stop quickly, and the evidence warranted a finding that this was done. The defendant was not bound to bring his car to a standstill when he slowed down to allow the street car to pass, and was not necessarily negligent in pushing on as soon as there was sufficient room to pass between it and the curbing. This must have taken some attention, as doubtless did the cars coming from the north and south, and that at the edge of the curbing on the south side of High Street. Moreover, the jury might have found the street to the east not very well lighted, and, as decedent and her husband were walking and the car moving slowly, that they did not come within the zone of the headlights until shortly before the collision. In view of these conditions, we are inclined to the opinion that whether defendant, in what he did, exercised ordinary care, was for the jury to determine.

VI. The negative answer to a hypo-

**7. APPEAL AND ERROR: persons entitled to allege error: rejection of evidence: curing error.** thetical question as to whether an automobile such as defendant's, moving at 6 or 7 miles an hour; could have caused the injuries to decedent was rightly stricken, for that the witness had not shown his competency. It was afterwards answered in the same fashion, and the witness testified that the injuries indicated a speed of 15 miles an hour; so that there was no prejudice, in any event. Any objections to the instructions were waived by not interposing objections thereto during trial in the district court, as exacted by Section 3705-a, Code Supp., 1913. *State v. Nott,* 168 Iowa 617; *Parkhill v. Bekin's Van & Storage Co.,* 169 Iowa 455.

We discover no reversible error, and the judgment is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.