FRED. H. WINSLOW, Appellee, v. COMMERCIAL BUILDING
COMPANY, Appellant.

**Master and servant:** SAFE PLACE TO WORK: DUTY OF MASTER: DELEGATION OF DUTY. It is the duty of the master to provide a servant with a reasonably safe place in which to work, and this duty can not be delegated; and, as in this case, the owner of a building is liable for injuries to his servant resulting from the negligence

of an independent contractor in failing to properly fasten a fire escape to the building.

**Same:** NEGLIGENCE OF MASTER: FACT QUESTION. The question of whether the master in the instant case might have discovered that the fire escape was not properly fastened to the building, and have remedied the defect prior to the accident to plaintiff, was for the jury.

**Same:** NEGLIGENCE: ASSUMPTION OF RISK. The mere fact that from a superficial view the fire escape appeared to plaintiff to be firmly fastened to the building was not sufficient, as a matter of law, to relieve the owner from liability for plaintiff's injuries resulting from the negligence of the contractor in fastening the same.

*Appeal from Blackhawk District Court.*—HON. C. E. RANSIER, Judge.

TUESDAY, JANUARY 18, 1910.

SUPPLEMENTAL OPINION, TUESDAY, MAY 3, 1910.

ACTION at law to recover damages for personal injury. Judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Carr, Carr & Evans* and *J. E. Williams,* for appellant.

*Boies & Law* and *Edwards & Longley,* for appellee.

WEAVER, J.—The defendant was the owner of a six-story office building in the city of Waterloo, and employed the plaintiff as a janitor therein. Upon the outer wall of this building, the defendant, in obedience to law and to an ordinance of the city, constructed and maintained an iron fire escape. It was built upon the usual plan, with a platform at each floor above the first story, all being connected by flights of stairs. To connect the first platform with the ground below there was an adjustable "emergency ladder," hung upon iron or steel supports at-

tached to or fastened in the brick wall of the building. Acting within the scope of his employment, plaintiff was engaged in superintending or assisting the work of painting the fire escape. Beginning at the top or sixth story, he worked his way down to the lower platform, from which he entered upon the emergency ladder. Standing upon the ladder some fifteen or twenty feet above the ground, he leaned out to inspect the painting on the under side of the platform, when the supports on which the ladder was suspended pulled from their fastenings, and plaintiff was thrown down, receiving severe injuries. Defendant is charged with negligence, in that the supports of the ladder had not been properly attached to or fastened in the wall when the fire escape was constructed; that defendant knew, or in the exercise of due care ought to have known, the defective condition of the fire escape, and failed to remedy it or to warn plaintiff of the danger therefrom; that said fire escape was not constructed in accordance with the provisions of the city ordinance which required the device to be firmly attached to the building, and plaintiff alleges that, by reason of such negligence, he was injured without contributory fault on his part, and demands a recovery in damages. The defendant admits that plaintiff was in its employment substantially as alleged by him, but denies any negligence or want of reasonable care on its part. It further alleges that the danger of injury such as plaintiff sustained was one of the risks incident to his said employment, and therefore assumed by him in accepting the position. There was a verdict and judgment for the plaintiff in the sum of $1,750.

The plaintiff's testimony tended to show that at the time of his injury he was acting within the line of his duty in the employment of defendant, and was exercising reasonable care for his own safety. It also tended to show that the ladder supports were not properly or safely at-

tached to the wall, and that the defect was probably one
of original construction. The evidence on part of the
defendant was devoted solely to the proposition that the
fire escape had been constructed by an independent con-
tractor, the defendant exercising no supervision or con-
trol as to the manner of doing the work, and that, in
selecting the contractor to perform the work, it exercised
due care and caution to secure one who was skilled in
the business and competent to perform it in an efficient
and proper manner. The sufficiency of this line of de-
fense is the question presented by the record before us.

Stated in succinct form the question may be put in
these words: "Is the master's obligation to furnish his
servant a safe place to work fully satisfied and discharged
by the exercise of reasonable care in select-
ing a competent independent contractor to
make it safe?" To sustain the affirmative
of this proposition, the appellant relies upon
the familiar line of authorities which hold
that as a general rule the doctrine of *respondeat superior,*
which arises from the relation of master and servant,
and makes the master answerable to third persons for the
acts or omissions of the servant within the scope of his
employment, has no application as between a contractee
and an independent contractor, and that the former is
not answerable to the servant of the latter for acts or
omissions of such contractor in the performance of his
contract. Were the question uncomplicated by inharmoni-
ous precedents, it would seem that the inapplicability of
the rule to a case like the one at bar would be self-evident.
There is nothing better settled in the law of master and
servant than that the duty of the master to provide the
servant a reasonably safe place to work is absolute and
nondelegable. The obligation can not be shifted from the
master to a fellow servant or to any other third person.
It is also a continuing duty and care in furnishing a safe

1. Master and
servant: safe
place to work:
duty of
master: dele-
gation of
duty.

place at the beginning of the employment must be followed by reasonable supervision, inspection, and care to keep it save until the relation of master and servant is at an end. On the other hand, in the case of an independent contractor, he is himself the employer, and has his own servants who look to him for the safety of their place of work, and he alone is liable to his servant or other person who is injured by his negligence *in the execution of his contract.* If, for instance, plaintiff had been the servant of the contractor who constructed the fire escape, and had received his injury *in the progress of that work* without contributory fault on his part, the rule as to independent contractors would clearly apply, and the owner of the building could not be held liable for the damages so sustained. But, when the contract was performed and the completed work accepted by the defendant, the relation of owner and independent contractor was dissolved, and thereafter could in no manner affect the obligation of such owner as an employer of labor in and about the structure thus erected. *Bailey v. Mayor,* 3 Hill (N. Y.) 531 (38 Am. Dec. 669); *Boswell v. Laird,* 8 Cal. 469 (68 Am. Dec. 345); *Gorham v. Gross,* 125 Mass. 240 (28 Am. Rep. 224); *Read v. East,* 20 R. I. 574 (40 Atl. 760); *First, etc., v. Smith,* 163 Pa. 561 (30 Atl. 279, 26 L. R. A. 504, 43 Am. St. Rep. 808).

While the cases here cited did not arise between master and servant, they go to the fundamental principle limiting and defining the extent to which the plea of "independent contractor" is available to a party owner when sued by a third person for damages occasioned by the defective condition of such owner's premises. The distinction between the responsibility of one who fails to perform a duty which the law requires him to perform and his liability for the negligence of those who are employed in doing the work is noted by Lord Blackburn in *Mersey D. & H. Board v. Gibbs,* 11 H. L. Cases, 686,

where he says that in cases governed by this principle "it is immaterial whether the actual actors are servants or not." In *Pickard v. Smith,* 10 C. B. N. S. 470, it is said that the rule respecting the nonliability of the owner or employer for the acts of a contractor is inapplicable to cases in which the contractor is intrusted with a duty incumbent upon his employer and neglects its fulfillment whereby an injury is occasioned. See, also, to the same effect, *Penny v. District,* 2 Q. B. 72. The case as between master and servant falls within the general rule that, wherever the law imposes a personal duty upon any one, he can not escape responsibility therefor or for the manner of its performance by employing a substitute. 1 Thompson, Negligence, sections 532, 665; *Texas R. Co. v. Juneman,* 71 Fed. 939 (18 C. C. A. 394); *Wilson v. White,* 71 Ga. 506 (51 Am. Rep. 269); *Houston Ry. Co. v. Meador,* 50 Tex. 77; *Hegeman v. Western R. Corp.,* 16 Barb. 353; same case on appeal, 13 N. Y. 9 (64 Am. Dec. 517). In the last cited case a railroad company sought to escape liability to a passenger by showing that a defective axle had been procured from a reputable and competent maker, and disclosed no exterior evidence of the defect. In upholding a verdict for the plaintiff, the court says that the law placed upon defendants the duty of furnishing a safe car for the passenger, and, while they were not required to become smelters of iron or builders of cars, they were required to exercise the requisite degree of care to make the car safe, and in so doing "they may construct it themselves or avail themselves of the services of others, but in either case they engage that all that well directed skill can do has been done for the accomplishment of this object. A good reputation upon part of the builder is very well in itself, but ought not to be accepted by the public or the law as a substitute for a good vehicle." See, also, *Brehm v. Railroad,* 34 Barb. 256.

Speaking to the question whether a master can by

employing a contractor to perform a duty which he owes to his servants relieve himself from liability for its non-performance, Mr. Labatt, a recognized authority on the law of master and servant, says: "The weight of authority would seem to be distinctly in favor of the doctrine that a master can not escape his responsibility by such a delegation of his duties. This, it is submitted, is the only doctrine which is logically tenable and which can be reconciled with general principles." See note to *Anderson v. Fleming,* 66 L. R. A. 153. In *Trainor v. Railroad Co.,* 137 Pa. 148 (20 Atl. 632), the court approves the rule that "the master owes to the servant the duty of providing a reasonably safe place to work in and reasonably safe appliances with which to do the work, and the delegation of this duty to an agent or independent contractor will not relieve the master from the responsibility for an injury to the servant resulting from such neglect." Many other cases and precedents lend support to this theory of the law, and, indeed, it is difficult to conceive how the courts can hold that the duty of care on the part of the master to provide a safe place to work is absolute and nondelegable, and at the same time say that he may delegate or shift the responsibility to the shoulders of a contractor. To affirm both propositions is to effectually negative both. That the decisions on the subject can not well be reconciled may be conceded.

The one oftenest cited in support of appellant's position is *Devlin v. Smith,* 89 N. Y. 470 (42 Am. Rep. 311). There a contractor for the construction of a public building let the contract to another to erect a scaffold needed in the progress of the work; the subcontractor furnishing his own materials and help, and building the scaffold after his own methods. The work was so defectively done that, when the principal contractor's servant went upon the scaffold, it fell and injured him, and it was decided that the servant's cause of action was against

the subcontractor alone.   In our judgment the conclusion as broadly stated in that opinion can not be sustained upon principle, but its scope and effect appear to have since been very materially narrowed.   In *Vosburgh v. Railroad Co.,* 94 N. Y. 374 (46 Am. Rep. 148), the defendant, seeking to escape responsibility for a defective bridge which it had purchased from the builder, cited the *Devlin* case as an authority in point, and the court, referring to the facts on which that decision had been made to turn, says: "If the scaffold instead of a temporary had been a permanent structure intended for continuous use throughout the years, and imposing upon Smith the duty of an inspection by skillful and competent agents whose proper performance of that duty would have disclosed defects of construction which made it unsafe, again a different question would have been presented."   As thus restricted, *Devlin v. Smith,* is not in point with the case at bar, for the structure here in question was a permanent structure, which, if well constructed, could be expected to answer the purpose for which it was designed practically as long as the building to which it was affixed.

Defendant pleads and proves that it gave the manner and method of the construction of the fire escape no attention or supervision whatever, leaving the work wholly to the contractor, and, except the official inspection by the city when the work was completed, there is no claim that it was ever in any manner inspected, or its strength and safety in any manner tested prior to the plaintiff's injury, some two years later.   It may be, as counsel argue, that reasonable inspection by defendant would not have revealed the weakness of the ladder's support, but we can not so hold as a matter of law.   It was for the jury to say whether due care would have discovered the defect and applied a remedy before the accident.

The mere fact that to a superficial view the fire escape

2. SAME: negligence of master: fact question.

appeared to be firmly attached to the building is not a sufficient answer to this suggestion. If each and all of

**3. SAME: negligence: assumption of risk.**

the several supports of the fire escape had extended but an inch or two into the wall, just sufficient to hold the device in place until it had passed inspection, thus constituting a veritable trap for any person having occasion to use it, the surface appearance presented would doubtless have been as perfect as if it were thoroughly well made, yet it would not do to hold as a matter of law that such superficial inspection would fill the full measure of the owner's duty to provide his servant a safe place to work. Of the other cases cited by counsel, *Haley v. Jump River Co.,* 81 Wis. 412 (51 N. W. 321, 956), disposes of the question without discussion and expressly upon the supposed authority of *Hackett v. Telegraph Co.,* 80 Wis. 187 (49 N. W. 822), which is not parallel in fact or principle with the one we have under consideration. *Butler v. Townsend,* 126 N. Y. 105 (26 N. E. 1017), is a New York case of the type of *Devlin v. Smith,* and subject to the same restricted application.

The standard to which the master must conform is that of reasonable care. He may employ servants or contractors to do the work which the law requires of him, but he can not delegate to them the exercise of the care which the law imposes upon him as a personal obligation.

None of our own cases have been cited, nor are we able to find any which are in any wise inconsistent with the views we have expressed. It should be said that it is open to some doubt whether the record before us fairly presents the principal questions argued by counsel. Except as it may be included within the scope of a general denial, the answer does not claim the benefit of the rule which exempts the employer from liability for negligence of an independent contractor, and quite likely it was not necessary to plead it specially. But no

request was made of the court to instruct the jury upon that theory, and the court submitted the case without objection upon the conceded general rule as to the requirement of reasonable care by the defendant to furnish plaintiff a safe place to work. We have thought it best, however, to take the case as counsel have argued it, and dispose of the points so raised according to our views of their merit.

We are of the opinion that the court properly submitted the cause to the jury with correct instructions as to the law bearing thereon, and the judgment appealed therefrom is therefore *affirmed*.