BERT HARTSHORN, Appellee, v. J. C. MARDIS COMPANY, Appellant.

**Master and servant:** NEGLIGENCE: SAFE PLACE AND APPLIANCES. It is the duty of an employer to furnish his servant a safe place to work, and the same rule applies with respect to appliances which he furnishes for carrying on the work; the test of liability being whether the employer furnished the structure or appliance, or whether it was so incident to and inherent in the work itself as to relieve the employer of such duty and place the burden on the servant to make the place or appliance safe.

**Same:** NEGLIGENCE: VICE-PRINCIPAL: LIABILITY OF MASTER. A plank runway constructed under the direction of the boss carpenter acting for the employer, and used by plaintiff in wheeling brick to the mason was a place or appliance which it was the employer's duty to make reasonably safe, and he was liable for the negligence of the carpenter in failing to perform this duty.

**Same:** INSTRUCTION: VICE-PRINCIPAL. There was some dispute in the evidence regarding the relations of the employer and his servants who constructed the runway, and an instruction authorizing the jury to determine whether it was the employer's duty to furnish the runway, and if so it was his duty to make the place safe, was not objectionable as submitting a question of law.

**Same:** CONTRIBUTORY NEGLIGENCE. The mere fact that plaintiff testified that he could notice a dangerous condition in a similar appliance used upon the trial as illustrating the one in question was not conclusive on the question of his contributory negligence, as it ignored the fact that when using the runway he was pushing a loaded wheelbarrow, which obscured his view, and that upon other runways used by him there was no similar dangerous conditions.

**Same:** ASSUMPTION OF RISK: SUBMISSION OF ISSUE. Where the evidence is such that different conclusions may fairly be drawn regarding an employee's assumption of risks incident to his employment the issue is for the jury.

**Same:** ASSUMPTION OF RISK: INSTRUCTION. The danger which charges a servant with assumption of risk is such as is obvious; but where

plaintiff was wheeling brick along a plank runway, in which there was a sudden drop of several inches at the end of one of the planks, an instruction that if plaintiff in the exercise of reasonable care might have seen and appreciated the danger, and such danger was imminent, he assumed the risk, was not objectionable for using the word imminent.

Same: CONTRIBUTORY NEGLIGENCE: EVIDENCE. The plaintiff was properly permitted to state how similar runways had been previously constructed, when limited to the question of contributory negligence.

Same: NEGLIGENCE: EVIDENCE. Where there was no dispute as to the purpose for which the runway in question was constructed, evidence tending to show that it was a mere utility in connection with the construction of the building was immaterial.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT, Judge.

TUESDAY, MARCH 24, 1914.

ACTION for damages for personal injury, alleged to have resulted from the negligence of the defendant. From a verdict and judgment for plaintiff, the defendant appeals. —*Affirmed.*

*Parker, Parrish & Miller* and *C. Woodbridge,* for appellant.

*John L. Gillespie,* for appellee.

WITHROW, J.—I. On the 24th day of July, 1911, the plaintiff was in the employ of the defendant as an unskilled laborer, a mason tender, and was engaged in the performance of work upon a building then in course of erection in the city of Des Moines; the defendant being the contractor for such work. His employment had been but for a few days preceding his accident and injury.

The claims made by the plaintiff as to the manner in which he was injured, and the cause, as pleaded by him, and

as substantially supported by the evidence as to circumstances of the injury, are as follows: That plaintiff was directed to wheel a wheelbarrow full of mortar from a certain platform on the roof of said building near the hoist on the north side of the building, over a certain runway, which the defendant, by its employees, had built from said hoist and platform toward the west. That, in wheeling said wheelbarrow in a westerly direction over said runway and along the north side of the building and on the roof thereof, the wheel of the wheelbarrow dropped down from one end of a plank through several inches of space onto another plank, which drop or bump caused the said wheelbarrow to become unbalanced and tip, thereby causing the plaintiff to lose his balance and to be thrown off of said runway and over the edge of the building to the ground, which fall severely and permanently injured the plaintiff. The runway was but a short distance south of the north wall, about parallel with it, and consisted of an inclined plank, two inches thick, and eight or ten inches in width, extending over an open space below, excepting ceiling joists of the third floor; the walls of the building having reached that height, but being at that place lower than the runway. With the jerk of the wheelbarrow resulting, as claimed from the wheel dropping from the end of the incline, the plaintiff was thrown toward the north and west, over the north wall of the building. The injuries resulting from the fall were serious and permanent; and counsel for appellant does not criticise the amount allowed as damages, if it shall be held that it is liable in any amount.

The particular grounds of negligence charged are that it failed to furnish to plaintiff a reasonably safe place to work; in failing to provide a reasonably safe runway from the platform and hoist towards the west, over which the plaintiff might operate the wheelbarrow; in that it caused to be built for plaintiff's use, and directed the plaintiff to use, the runway, it at the time being defective, rough,

and uneven, and was so built as to cause the wheel
of a wheelbarrow being run over the top of it to
drop from one end of the plank down onto another plank
or board.  He pleads that he was free from contributory
negligence.

The defendant alleges that the plaintiff, at the time,
was thoroughly familiar with the condition of the runway,
knew the manner in which it was built, and that he then
appreciated all danger incurred in the work he was then
doing, and that he assumed the risk.

The trial resulted in a verdict and judgment for the
plaintiff, from which this appeal is taken.

II. The superintendent in charge of the construction
was one McGorrick, and the foreman in charge of the car-
penter work was a man whom some witnesses refer to as
Welsh, others calling him Hodge.  There being no question
that the witnesses who speak of him by the different names
mean the same man, so far as reference to him is necessary
we shall call him Hodge.

According to the testimony of the plaintiff, his duties
were only to help the masons by furnishing to them brick and
mortar for their work; the means of transportation supplied
to him for that purpose, and which he used, being a wheel-
barrow.  It is the claim of the appellee, and the evidence
tends to so show, that the runway over which he passed had
just been constructed, and that he had not used it before
the time of his accident; that it was built by Hodge, the
boss carpenter, who was acting in such matters under the
direction of McGorrick, the superintendent; that the car-
penter left the upper end of the plank resting upon the
board or platform, with no strip or wedge-shaped piece to
connect the plank by a smooth course with that upon which
it rested; and that because of there being no such provision,
and because of the position of the end of the board, there
was a fall or drop.  The evidence also tends to show that
other runways which had previously been used by the

appellee in his work on the building had been leveled by a cleat or strip, or in some other manner made flush with that with which they were connected. It also appears that he had at no time been charged with the duty of preparing the runways, or that he had assisted in preparing them. He also testifies that he did not see or know of the drop in this runway at the time of his injury, and that he proceeded in the manner which he had previously followed. Upon this point it is claimed by the appellant that appellee's statement that he did not see the condition cannot weigh against the admission made by him upon the trial that he could see the drop in a model, alike in size, an arrangement which was used during the trial, and to which, from various positions taken by him, his attention was directed.

McGorrick, the superintendent, testified that he was in charge of the construction of the building, and that Hodge, the carpenter foreman, did all the building, repair, and construction of the runways, under his (McGorrick's) supervision, and that he had built this one. He had seen the runway before the accident and glanced over it to see that it was handiest. He also testified that he examined the drop after the accident, and thought it was not over five-eighths of an inch. It was and is claimed on the part of the appellant that one Douglas assisted in the construction of this runway, and that he was a co-employee of the appellee, and that for any negligence, if there was such, in the manner of its construction, it would not be liable. The connection of Douglas with that particular piece of work is in some dispute, but his own testimony was that all he did was to get the plank and block for the boss carpenter. This same witness testified that he saw the plank within a short time after the accident; that there was no block at the upper end of the plank; that the boss told him the wheel bounced over there, and not to wheel another wheelbarrow over that, and it was taken up. This statement of the evidence is sufficient to determine the questions which are raised by the appeal.

III. The errors assigned are many, but are grouped and discussed by counsel under six heads. With the exception of the last ground, all are in support of the claim that the evidence was insufficient to warrant a verdict against the defendant; and these we will consider in the order of their presentation.

It is first contended that the rule as to safe place is not applicable to the case, for the reason that the runway was not a place which the appellant was bound to make safe for the use of the appellee; that it was no part of the permanent structure; that it was not an appliance within the meaning of the rule requiring reasonably safe appliances to be furnished by the master; but that it was a temporary expedient or utility, which was an incident and detail to the work. The ultimate claim as to this feature of the case is that recovery for injuries resulting from a failure to maintain a safe place to work must be rested upon proof that that which is claimed to be an unsafe place is of a permanent nature. On this question there is a want of harmony in the authorities, but this court has not recognized that feature, as thus broadly claimed, as the controlling one in determining liability. The rule as to the duty of the master to furnish a safe place for his employees to work has universal recognition; and this also is true as to appliances with which the work is to be done; and this has been by this court held to apply to a scaffolding used in the erection of a building, and which was from time to time changed to meet the requirements of the work. *Foley v. Cudahy Packing Co.,* 119 Iowa, 246; *Haworth v. Seevers Mfg. Co.,* 87 Iowa, 765. The same rule has been recognized in the case of a slide used as a means of conveying ice to the icehouse for packing, and which from time to time was required to be changed. In 25 Cyc. 1115, it is given as: "Where a master furnishes or causes to be built, under his direction and control, a platform, scaffold, staging, or like structure, for the use of his

1. MASTER AND SERVANT: negligence: safe place and appliances.

servants in the prosecution of their work, it is his duty to
see that it is reasonably safe for the purpose contemplated.''
The real test in such cases is whether that which is claimed
to have been the cause of the injury was a construction or
appliance furnished or caused to be furnished by the master,
or whether it was incident to and so inherent in the work
itself as to relieve the master of the duty, and place upon
the employees whatever consequences might result from its
negligent construction. Included in this question is always
whether the particular negligence of which complaint may
be made is that of a co-employee, or of the principal depend-
ing upon whether it is the means furnished for doing the
work or a part of the service itself. We find no better state-
ment of the rule than is given in Cooley on Torts, page 663,
heretofore quoted by this court, and which, because of its
direct bearing upon the question presented here, we repro-
duce: ''He (the master) is charged with such a duty as
regards the safety of his premises, the suitableness of the
tools, implements, machinery, or material he procures or
employs, and the servants he engages or makes use of. Who-
ever is permitted to exercise the master's authority in respect
to these matters is responsible for a want of proper caution
on the part of the agent as for his own personal negligence.''
The rule thus stated governs the appliances which may be
furnished, as well as the place furnished for the work, and
whether we call the runway a place or appliance the rule
of duty and liability is the same. See, as supporting this
proposition, the cases above cited, and also *Wilder v. Cereal
Co.*, 134 Iowa, 460; *Winslow v. Commercial Building*, 147
Iowa, 238; *Jacobson v. Gypsum Co.*, 144 Iowa, 1; *Funk v.
Construction Co.*, 140 Iowa, 816. From this conclusion we
proceed directly to the record to ascertain whether the proof
was of such nature as to require the trial court to submit
to the jury the question of liability.

There is but slight, if any, dispute as to who constructed
the runway. It was done by or under the direction of Hodge,

the boss carpenter, who did all the construction of the run-
ways, under the general direction of the
superintendent. The means thus provided
was one of the instrumentalities by which
the work of the employees who wheeled the
material was to be performed, with the construction or con-
trol of which, so far as appears from the record, they were
not charged with the slightest duty. Being a means provided
by the master, constituting either a place over which or an
appliance by which the service of the employee was to be
rendered, and having been constructed or prepared by one
who was acting for the master in so doing, the servant so
acting, whatever may have been his relations to others
employed as to general work, was a vice principal, for whose
negligence the master will be liable as his own. *Beresford
v. Coal Co.*, 124 Iowa, 34; *Collingwood v. Fuel Co.*, 125 Iowa,
537; *McGuire v. Mill Co.*, 137 Iowa, 447; *Funk v. Construc-
tion Co., supra.* We hold that the rule as to safe place, as
given by the trial court to the jury in the instructions, was
properly submitted.

2. SAME: negli-
gence: vice-
principal: lia-
bility of mas-
ter.

In this connection we note the objection to instruction
No. 5, in which the jury were told they should first determine
whether it was the duty of the defendant to furnish and provide
the runway in question; and, if so found, then
the rule as to safe place would govern. The
contention of the appellant is that the question
whether one who is guilty of negligence is a fellow servant
or a vice principal is one of law and not of fact, and it was
for the court, and not the jury, to determine whether Douglas
and the boss carpenter were or were not vice principals. The
relations to the principal of the employees who constructed
the runway was in some, but not serious, dispute. The trial
court might properly have instructed the jury that if they
found that the construction of the runways was done by
Hodge, the boss carpenter, under the direction of the superin-
tendent, and that the defendant had provided them, includ-

3. SAME: instruc-
tion: vice-
principal.

ing the one claimed as the cause of the injury, and that the employees who used the runway did not construct or have the duty of constructing it, then they should find that it was the duty of the employer to see that such place was reasonably safe. The instruction did not go that far, but was really less favorable to the appellee than he was entitled to under the facts; and no prejudice could have resulted to the appellant from it.

IV. It is urged by the appellant that it was bound only to furnish suitable and sufficient material and competent servants for the building of the runway, and that it fulfilled this duty. This proposition necessarily assumes that the duty of constructing the runway was upon the appellee or his co-employees, and was no part of the master's duty. There is no substantial basis in the evidence to support that position, as indicated by what we have said in the preceding division of this opinion.

V. It is urged that the defendant was guilty of contributory negligence. This is based upon the testimony, to which we have earlier referred, relating to the similar structure used upon the trial, and as to which the appellee, upon being so interrogated, answered that he could see the condition of the exhibited runway. But this, we think, is by no means conclusive of the question, leaving out of consideration, as it does, the fact that the appellee, in the discharge of his duty, was pushing up the incline a heavily loaded wheelbarrow, the line upon which he was moving affording bare room for his steps, the fact that on all other runways used by him there were no conditions of danger such as are claimed to have caused his injury, all of which were circumstances properly entering into the question whether he exercised ordinary care, and required its submission to the jury.

4. SAME: contributory negligence.

VI. It is claimed that the plaintiff assumed the risk

incident to his employment. Upon this question the trial court instructed the jury as follows:

If you find it has been established by a preponderance of the evidence that the plaintiff knew, or in the exercise of ordinary care and prudence upon his part should have known, of the particular conditions in regard to said runway, which plaintiff now charges as negligence upon the part of the defendant, if such negligent conditions existed at said time, and that plaintiff appreciated the dangers that may have existed at said time in the use of said runway under said existing conditions, and that said danger was imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work, then and in such case the plaintiff assumed the risk of the alleged negligence of the defendant upon which he bases his right to recover, and your verdict should be for the defendant.

Whether or not the appellee was charged with the hazard of an assumed risk necessarily depended upon the facts, and upon whether the master had exercised reasonable care for the safety of his employees; and the trial court had not the right to solve those facts for or against either party, depending, as they did, upon the evidence from which different conclusions might have been drawn by the jury. *Murray v. Coal Co.,* 138 Iowa, 887; *Wheeler v. Brick Co.,* 142 Iowa, 400.

5. SAME: assumption of risk: submission of issue.

VII. Criticism is made of the use of the words ''and that said danger was imminent,'' in the instruction quoted in the preceding division. The danger which charges one, under certain conditions, with having assumed their risk are such as are obvious. As applied to the facts in this case, if the appellee, upon ascending the runway, saw, or in the exercise of reasonable care could have seen, the condition at its end, and appreciated that it was dangerous, it was under the situation then presented, an imminent danger calling for retreat. We think there was no error in the instruction in that respect.

6. SAME: assumption of risk: instruction.

VIII. Over the objections of the appellant, the appellee was permitted to testify as to the manner in which the runways had been fixed at the end, prior to the one from which he claimed to have received his injury. He stated that a square block was split to a wedge shape, hewn down, and placed at the upper end of the plank. The evidence was offered and received for the purpose of showing his freedom from contributory negligence, but was expressly held by the trial court as not competent as showing negligence. We think, as thus limited, the evidence was properly admitted, bearing, as it did, upon what appellee had the right to or reason to believe was its condition, and therefore as tending to show his own care.

7. Same: contributory negligence: evidence.

IX. McGorrick, the superintendent, was interrogated as to whether runways similar in character to this one were installed in the building from time to time as the work progressed. The purpose of the testimony, as stated by counsel, at the time, was to show that the runway was a mere utility in connection with the construction of the building. The trial court held, and, as we think, properly so, that the evidence was immaterial, as there was no controversy as to the purpose for which it was built. Whether or not it was a utility, changed from time to time as the necessities of the work required, was not controlling, if it was a place provided by the master for the discharge of the work. There was no error in excluding the testimony.

8. Same: negligence: evidence.

X. The evidence was such as to require the submission to the jury of all questions upon which liability was predicated, and of the conditions or acts which it is claimed barred recovery.

We find no error, and the judgment of the trial court is—*Affirmed.*

Ladd, C. J., and Deemer and Gaynor, JJ., concur.