LORETTA KAUZLARICH, administratrix of estate of Lillie Cline, deceased, appellee, v. BERT FITZWATER, appellant.

No. 51125.

(Reported in 125 N.W.2d 205)

DECEMBER 10, 1963.

Ross H. Sidney of Austin, Grefe & Sidney, of Des Moines, for appellant.

Milani & Milani, of Centerville, for appellee.

THORNTON, J.—This is a guest case. Plaintiff's decedent

lost her life while riding in the right front seat of defendant's automobile. The automobile went off of the highway on the left-hand side and struck one of the pilings supporting a railroad overpass over Highway No. 60 about two miles south of Moravia in Appanoose County.

Defendant appeals urging the evidence was insufficient to support an inference of reckless operation on his part.

I. At the outset plaintiff contends there is nothing before us for review because defendant has made a blanket assignment of errors. In effect defendant has made a single assignment bearing on the sufficiency of the evidence to show recklessness. His position and contentions are clear and neither plaintiff nor this court is in anyway misled. It is apparent from plaintiff's excellent brief and argument her counsel fully understand defendant's contention and is not prejudiced. Jerrel v. Hartford Fire Insurance Co., 251 Iowa 816, 817, 103 N.W.2d 83, 84, 80 A. L. R.2d 1281.

II. It is our duty to examine the evidence to determine whether there is substantial evidence from which a jury might reasonably draw an inference of reckless operation. Only the evidence most favorable to plaintiff is considered whether or not contradicted. Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d 575, 577. However, the burden is on plaintiff to prove defendant's recklessness. Goodman v. Gonse, 247 Iowa 1091, 1099, 76 N.W.2d 873.

Reckless operation of a motor vehicle as used in section 321.494, Code of Iowa, 1958, means more than negligence, more than want of ordinary care. It means, proceeding with no care coupled with disregard for consequences, the acts must manifest a heedless disregard for or indifference to the rights of others in the face of apparent danger or danger so obvious the operator should be cognizant of it, when the consequences of such actions are such an injury is a probability rather than a possibility. Recklessness may include willfulness or wantonness, but if the conduct is more than negligent it may be reckless without being willful and wanton. Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54; Fritz v. Wohler, 247 Iowa 1039, 1041, 78 N.W.2d 27, 28; Schmitt v. Cutkomp, 248 Iowa 575, 578,

81 N.W.2d 662, 664; Lewis v. Baker, 251 Iowa 1173, 1177, 104 N.W.2d 575, 577; Beletti v. Schuster, 253 Iowa 1166, 115 N.W.2d 858; Wilcox v. Hilligas, 254 Iowa 204, 207, 117 N.W.2d 42, 44; Winter v. Moore, 255 Iowa 1, 12, 121 N.W.2d 82, 88; and citations in each of these authorities. In Fritz v. Wohler and Schmitt v. Cutkomp, both supra, we point out the elements of recklessness as follows: (1) No care coupled with disregard for consequences. (2) There must be evidence of defendant's knowledge, actual or chargeable, of danger and proceeding without any heed of or concern for consequences. (3) The consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility. We have required evidence of a persistent course of conduct to show no care coupled with disregard of consequences. If it were not so required we would be allowing an inference of recklessness from every negligent act.

The evidence, viewed in the light most favorable to plaintiff, shows defendant was a friend of decedent and her family. Decedent was a widow and lived in Centerville. On March 15, 1960, defendant, accompanied by deceased, drove decedent's daughter, Marcella, then 16 years old, and three of her girl companions to Moravia to a church skating party. It was snowing at the time. They arrived there around 7 p.m. Defendant and decedent left the girls and drove to the Twilight Club. They were to pick the girls up after the party. The club is apparently located on the south edge of Moravia on or near Highway No. 60. Due to the severity of the snowstorm the skating party was called off and Marcella and one of the other girls, Judy Carson, 16 years old, were brought to the Twilight Club in another car. They arrived between 7:30 and 8 p.m. It was snowing hard at the time. All remained at the club until about 10:30 p.m. The return trip to Centerville was then started. Defendant described the storm as a blizzard. At the time the return trip was started defendant cleaned the windshield. Decedent was seated in the right front. Marcella and Judy Carson were in the back seat, Marcella behind the driver. Both were seated forward with their arms on the rear of the front seat watching the road and speedometer. Either before the trip was

actually started or shortly thereafter decedent suggested they spend the night in Moravia. Defendant replied, "We will make it God being willing." Once or twice the girls told defendant to slow down, just when these suggestions were made is not clear. Defendant did not slow down but proceeded at the same speed. Judy testified the speed was 24 or 25 m.p.h., Marcella that it was 25 to 30 m.p.h. At times as they proceeded south the windshield was covered with snow either from wet snow or gusts of dry snow. Plaintiff's evidence shows both. At other times the visibility was such the roadway could be seen ahead. Plaintiff's evidence is not clear as to the extent of visibility or the length of time visibility was obscured. Nor does her evidence disclose the location of the auto on the roadway until the auto hit the piling on the left side. Defendant's evidence, by testimony of a driver following the tracks made by defendant's car, shows the witness followed defendant's tracks from Moravia to the point of the accident. He testified, "* * * I suppose he [defendant] veered maybe over on the shoulder enough so he could possibly tell he was off of the highway, then would come back on again. * * * they were just normal tracks. They were located on the right side of the highway. * * * There was no weaving back and forth. * * *." He further testified he did not realize he was coming to the second overpass, he was watching the tracks, his lights showed defendant's car against the piling and he veered off to the right and under the overpass.

Plaintiff's evidence shows that just prior to the collision the windshield was covered with snow and the windshield wipers had completely stopped, "* * * it was like a sheet had been pulled over the car." Defendant did not put on his brakes or turn the car, he was driving between 25 and 30 m.p.h. Marcella testified on direct examination, "It seemed quite a ways he drove when the headlights did not show through the windshield. I couldn't say how far." On cross-examination she testified, "The windshield became obscure more than a matter of a second or two before the crash. I couldn't say but it seemed longer than 10 seconds that the windshield became obscured before the crash."

The point of impact was the dead center of the front end of

the car. It struck the most easterly of the pilings supporting the railroad overpass. The piling was about 12 to 14 inches in diameter. From the Twilight Club to the collision underpass it is about two miles. The paving is 18′ 3″ wide. The distance between the pilings is 33′ 7″. The highway is about straight south from Moravia to just north of the collision underpass. North of the underpass the highway turns west and southwest, it is not a 90° turn. The exact distance the turn is north of the underpass is not shown. From the turn there is a slight decline to the underpass. There is a 50-m.p.h.-curve sign three tenths of a mile north of the underpass. There is a low-clearance sign 310 steps north of the underpass. There were white and black diagonal boards on the pilings on each side of the highway and the jury could find there were reflectors on each side. Some distance north of the collision underpass is another underpass, at that point the highway is straight north and south. From the pictures in evidence it is clear the defendant did not proceed directly south from the point of the turn but that he turned some to his right and in so doing did not turn far enough to follow the highway on his own side of the road, but went to his left across the left side of the pavement and struck the piling. The piling is 6′ 5″ to the left of the left-hand edge of the pavement.

Defendant at the time was a salesman traveling in the area. From his testimony it shows he was 49 years old at the time of trial, two years and seven months after the accident. He knew of both underpasses on the highway south of Moravia and of the turn to the west. He testified, "As we made this trip, I knew exactly where we were, * * *." He stated he saw the black and white diagonal boards on the piling but thought it was a similar warning sign on the back of a semitrailer; he tried to turn to his right but was unable to miss the piling due to the heavy snow. The jury could find a snowplow had been over the road from Moravia to the point of the accident, that a yellow no-passing line extended between five and six tenths of a mile north of the overpass, and that at times the entire highway was covered with snow.

To sustain the finding of recklessness plaintiff sets out

twelve factual situations or conclusions from the evidence. Briefly they are, defendant's windshield was covered with snow and the windshield wipers had stopped, he did not turn or apply his brakes, when he could see nothing he drove for ten seconds until he hit the piling, he was traveling 25 to 30 m.p.h., he was on the wrong side of the road, he knew exactly where he was, though he was familiar with the highway he did not see signs indicating the turn and overpass, he knew the bridge was ahead of him and drove in a continuous snowstorm or blizzard, his tracks led directly to the piling, and he did not heed decedent's request or the suggestion of the girls that he slow down.

In addition to the above there is evidence of defendant's drinking while at the club, however, plaintiff does not plead he was under the influence of intoxicating liquor, only reckless operation. There is no claim he was unable to drive. If plaintiff claims something here it is only to show defendant's attitude. Some claim is made because he stayed at the club for some time after the girls wanted to go home and that during this period the storm got worse. The evidence bearing on this, viewed most favorably to plaintiff, does not sustain an inference of recklessness from starting on the trip home at the time. The evidence shows others were out in the storm at the time. Merely starting the trip shows no more than negligence, if that. Nor does his failure to heed the suggestion of decedent with his reply of "We will make it God being willing" show a state of mind of no care or disregard of consequences. Nor does his failure to drive slower than 25 to 30 m.p.h. at the suggestion of the girls. Actually the record does not disclose when in the two-mile trip from the club to the overpass such suggestions were made; and it does not show anything about defendant's driving other than driving at that speed in a snowstorm with reduced visibility. Due to the drifting and blowing of snow, at times visibility was reduced to zero. But the evidence does not show how long visibility was reduced to zero at any one time other than when the car struck the piling. The only fair inference is the visibility was always reduced but only zero at short intervals. Bearing on this, Marcella testified, "As we proceeded on the highway, there were times when the snow was worse than others." Judy testi-

fied, "Sometimes he would slow down and as the storm let up and the visibility improved, he would pick up speed a little bit." Bearing on the concern of the girls, Judy testified, "We didn't ever stall. I was concerned about stalling and I was worried about getting home safely."

There is no substantial evidence from which an inference of reckless operation may be drawn from the time the trip started until the point of the turn or until ten seconds before the accident. The only evidence we have shows defendant proceeded at 25 to 30 m.p.h. on his own side of the highway in a severe snow-storm or blizzard. It is extremely doubtful if this is negligence. If the course of conduct from the club to the turn had continued there would have been no accident.

The oral evidence does not show the distance from the start of the turn to the overpass nor can we determine it from the photographs in evidence. If we assume Marcella's statement, "I couldn't say but it seemed longer than 10 seconds that the windshield became obscured before the crash", is substantial evidence the windshield was completely covered and the wipers stopped, we still must base recklessness on conduct over a space of time of ten seconds. Unquestionably visibility changed from 50 feet (defendant's testimony) to zero. Plaintiff's evidence does not show how slow or rapid this condition changed. It does not show it lasted for that length of time or more at any prior time. When it did happen, how quickly must defendant react by stopping and taking necessary steps to see to avoid being reckless? Did he have any of these seconds to see if the windshield wipers would start again (the wind was blowing, it was drifting everywhere according to the sheriff) or to otherwise maintain a lookout? Some of course. The jury could properly find for this space of time he did nothing. During this time he would travel between 367 and 440 feet. From his own testimony he knew he was in the turn, but none that he knew his location on the highway or the direction of his car in relation to the piling. At most he knew he was in the turn and could not see for a matter of ten seconds.

In Olson v. Hodges, 236 Iowa 612, 624, 19 N.W.2d 676, 683, cited by plaintiff, we point out that weather and road conditions

may make travel on the highways impossible or too hazardous to attempt. That such was not the case there was pointed out by the fact others were on the highway. We there stated:

"An important factor in determining whether there was reckless operation of a motor vehicle is the fact that the driver either knew and appreciated the existing dangers, or the conditions and circumstances were such or were so obvious that he should have known and been conscious of the dangers. Proof of either is sufficient. It is the heedless disregard of these known or apparent dangers that constitutes recklessness. Appellant knew of the road conditions but it cannot be said, under the record, that he was utterly heedless of or indifferent to them."

We think the above from the Olson case is applicable here. Weather conditions were bad but defendant was proceeding at a reasonable speed. From what the record shows he was on his own side of the road until he went into the turn, for ten seconds his vision was completely cut off, during that time he did nothing. He was still proceeding at the same rate of speed. Though he stated he knew exactly where he was at all times, his testimony, and Marcella's, show he did not know the piling was immediately ahead of him, but it cannot be said his failure to avoid the piling within ten seconds is evidence of a persistent course of conduct showing no care, nor does it show a heedless disregard of the circumstances or of the safety of his guests.

We are not unmindful here that defendant could have prevented the severity of the impact and possibly the injury and death by immediately applying his brakes when the windshield became covered, but this failure within the space of ten seconds is no more than negligence. We find no authority to the contrary.

Cases where a driver has gone off the left side of the road and we have held an inference of recklessness could properly be drawn are Whiting v. Stephas, 247 Iowa 473, 74 N.W.2d 228; Anderson v. Elliott, 244 Iowa 670, 57 N.W.2d 792; Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576; and Hart v. Hinkley, 215 Iowa 915, 247 N.W. 258. In each of these cases the driver went off the left-hand side of the road while attempting a right turn. None of these had weather conditions similar to this case.

In each the driver's speed, conduct and surrounding circumstances were such as to support a finding of a persistent course of conduct showing no care coupled with disregard of circumstances.

It follows that the case must be and hereby is reversed and remanded with directions to dismiss the petition. —Reversed and remanded.

All JUSTICES concur.