Leonard **BRANDT** and Norma Brandt,
Appellees,

v.

D. E. **RICHTER,** d/b/a Richter Stock
Farm, Appellant.

No. 52824.

Supreme Court of Iowa.

June 11, 1968.

Rehearing Denied Sept. 16, 1968.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, and Blair Hunter, Reinbeck, for appellant.

Mosier, Mosier, Thomas, Beatty & Dutton, Waterloo, for appellees.

BECKER, Justice.

The plaintiffs, Leonard Brandt and his wife Norma Brandt, brought this law action to recover for personal injuries Leonard suffered while working as a farm employee for the defendant D. E. Richter. The jury awarded Leonard damages in the sum of $8,600 and denied damages to the wife. When defendant's motion for judgment notwithstanding the verdict was overruled on March 9, 1967, defendant appealed. The sole error relied upon for reversal is: The court erred in overruling defendant's motion for a directed verdict because there was insufficient evidence to generate a jury question on the issue of defendant's negligence. We affirm the order overruling the motion for directed verdict.

■ I. In considering the propriety of a motion for directed verdict we view the evidence in the light most favorable to the party against whom the motion is made. Rule 344(f) (2) R.C.P.

Mr. Brandt had been working as a farm hand for defendant D. E. Richter, operator of the Richter Stock Farm, for about a year prior to March 27, 1964, the date of the injury. Plaintiff was an experienced farm hand, having worked on farms since childhood. During the four years immediately prior to working for defendant, plaintiff had worked at another stock feeding farm using similar methods and machinery.

The injury occurred early in the morning while plaintiff and his brother, also an experienced farm employee, were filling cattle feeding bunks with silage. These bunks were 20 feet long, 28 inches high and 3 feet wide. They were located in a feeding yard surfaced with corn cobs spread to a depth of about 2 feet. It was snowing while plaintiff and his brother performed the work.

They used a combination John Deere tractor and Farmhand Feed Wagon. The tractor pulled the wagon and also supplied the power to operate an auger mechanism. From the wagon the silage was augered into the feed bunks. Plaintiff, whose right leg was crippled and shortened due to a childhood injury, walked along the side of the unit opposite the bunks to keep the cattle out of the way. When a steer came between the tractor and the bunks, plaintiff tried to cross from one side of the wagon to the other by stepping over the drive shaft bar. "I swung my left leg over the power shaft and when I did this I lost footing and went back and raised my left foot up right under the shield

of the tractor. It caught my coverall pant leg winding it up and tearing it just beyond the knee."

The transfer of power from the tractor to the wagon is accomplished by a rotating shaft which is connected to the tractor at the power take-off or PTO. The shaft extends back into the wagon and the exposed surface of the shaft itself is protected by a tubular covering which encloses and protects it against outside contact. The mechanism that is not protected by the tubular shield consists of a thumb button which permits connection to the PTO and a knuckle which allows both vertical and horizontal movement of the drive shaft while the unit is in operation. This connecting portion of the unit is covered by a fixed, half-moon shield which is bolted to the tractor and is not a part of the drive shaft unit. The tractor shield extends over the exposed knuckle mechanism but allows an open space between the tractor shield and the knuckle where clothing or other material can contact the revolving knuckle. The relative position of the fixed shield and the drive shaft knuckle varies due to the movement of the drive shaft knuckle while the tractor shield remains in a fixed position.

When plaintiff's brother discovered the trouble he stopped the tractor. Plaintiff's left leg was severely fractured. His pants' leg and insulated underwear were wrapped around the knuckle mechanism and appeared to be caught on the release button which was a part of the connecting unit.

Dr. Norval Wardle, professor of agricultural safety engineering at Iowa State University, testified for plaintiff. From his testimony and the testimony of plaintiff and his brother the jury could find:

1. The men were using two pieces of equipment, each involving parts moving with considerable force and speed which, if not adequately shielded, create a high degree of danger.

2. Each piece of equipment had its own shielding devices.

3. The tractor shield is built expressly to be connected to another half-moon type shield which is fastened to it and extends the full length of the PTO extension.

4. The additional shield for which the tractor was designed was not used.

Relevant opinion testimony included:

1. The two types of shields do not cover the moving parts and are therefore incompatible.

2. The combination is unsafe because it leaves an open space over the power take-off into which clothing or other material could very easily enter and be caught on the PTO shaft.

3. It would be feasible and practical for a farm owner to adequately shield the power take-off and knuckle and he (the expert) has seen some adaptations where the half-moon shield was extended part way.

4. The manufacturer's shield was made to take an additional shield to extend the half-moon shield protection all the way along the power driven bar.

5. There are many factors which tend to catch clothes on rotating equipment, including protuberances such as a knuckle or a bolt and even the air currents set up by the rotation has an effect.

The sole submitted specification of negligence was "That defendant, D. E. Richter, is guilty of negligence in failing to use reasonable care to provide and maintain reasonably suitable and safe appliances and machinery for his employees to work with." This specification was properly submitted.

■ II. The applicable law was given the jury in instruction # 6, part of which reads: "The law provides that an employer must use reasonable care to provide and maintain for his employees, reasonably suitable and safe appliances, machinery and tools with which to work.

"The employer is not required to provide appliances, machinery and tools which are

absolutely safe, nor required to maintain the same in such condition that an accident to the employee could not happen. The employer is not an insurer of the employee's safety, but must exercise the degree of care which a person of ordinary care and prudence would use under all the circumstances and conditions to provide appliances, machinery and tools which are reasonably safe." The instruction was used in Wagner v. Larson, 257 Iowa 1202, 1210, 136 N.W.2d 312, 317. It covers the same principles recently repeated in Van Aernam v. Nielsen, Iowa, 157 N.W.2d 138; Bengford v. Carlem Corporation, Iowa, 156 N.W.2d 855; Kregel v. Kann, Iowa, 152 N.W.2d 534. Those general principles have been oft repeated and are not in dispute. The court correctly advised the jury the standard of care is ordinary care and prudence under the existing circumstances and conditions.

■ III. In Van Aernam v. Nielsen, supra, we said: "Our function in review is to examine the evidence to determine, not whether it proves defendant guilty of negligence in failing to exercise reasonable care to provide and maintain for his employee reasonably suitable and safe appliances, machinery and tools with which to work, but whether it makes a sufficient showing so that the trial court would be warranted in submitting the question to the jury and the jury in the exercise of its function as the trier of the facts be justified in finding defendant negligent. Kregel v. Kann, supra, Iowa, 152 N.W.2d at 538, and citations."

■ IV. In reaching its conclusion under the applicable law the jury may be aided by proper expert testimony. In Brower v. Quick, 249 Iowa 569, 578, 88 N.W.2d 120, 125 (an auto accident case) the general rule is set out. "It is well settled in Iowa that if a witness is possessed of special training, experience, or knowledge in respect to the matter under investigation, and if his opinion based on evidentiary facts will be of aid to the jury in reaching a cor-rect conclusion, and if the opinion expressed does not bind the jury to accept it, but leaves the ultimate conclusion to be determined by the judgment of the jurors themselves, such testimony is not improper nor prejudicial."

Farm experts were used in Bengford v. Carlem, Iowa, 156 N.W.2d 855, opinion filed March 5, 1968; Kregel v. Kann, Iowa, 152 N.W.2d 534. In Calkins v. Sandven, 256 Iowa 682, 688, 129 N.W.2d 1, 4, we noted, "A safety agricultural engineer from Iowa State University says that in guarding against major farm hazards if the objective of a machine can be obtained by completely covering the moving part, the experienced engineer tries to do so. 'The principle is to guard these as effectively as you can and still obtain the purpose of the machine and if we can enclose it entirely we would do this or put some shield over it.'"

■ It was not intimated in Calkins that use of such expert testimony was an attempt to change the standard of care placed on the defendant from that of a person of ordinary care and prudence under the circumstances to that of a person with the knowledge of a safety expert. This was not done there nor was it done here. The expert testimony was properly admitted to aid the jury in reaching its decision based on the instructions. Defendant does not now urge such evidence was inadmissible.

■ V. The duty to furnish safe tools and appliances includes the duty to use reasonable care in selection and inspection. Parkhill v. Bekin's Van & Storage Co., 169 Iowa 455, 469, 470, 151 N.W. 506. This is a nondelegable duty. Winslow v. Commercial Building Co., 147 Iowa 238, 241, 246, 124 N.W. 320.

The nondelegable duty to use reasonable care to provide and maintain a reasonably safe place to work and reasonably suitable and safe machinery may not be met by claiming reliance on the product of a reputable manufacturer. 35 Am.Jur., Master and Servant, section 144, p. 575; 56

C.J.S. Master and Servant § 237; Hailey-Ola Coal Co. v. Parker, 32 Okl. 642, 122 P. 632, 40 L.R.A.,N.S., 1120; Siebert v. Liggett & Myers Tobacco Co., 217 Mo.App. 163, 273 S.W. 153.

This from the annotation on this subject at 53 A.L.R. 144 is worth noting: "Upon the analogous question whether an employer may avoid liability to an employee, upon the ground that the defective instrumentality was purchased from a reputable manufacturer or dealer, the writer in 18 R.C.L. 564, 565 (Master & Servant, § 75), after noting the difference of opinion upon the point, concludes: 'Modern tendencies seem to be in favor of holding that the mere purchase of the offending instrumentality from a reputable dealer is not alone sufficient to excuse the employer, but that, with this requirement, is coupled the duty of such reasonable examination as is practicable by a prudent man under similar circumstances.'"

We have rejected reliance on a reputable dealer when the issue was a safe place to work rather than safe machinery. The principle is the same. Compare 56 C.J.S. Master and Servant §§ 236 and 237. In Winslow v. Commercial Building Co., 147 Iowa 238, 124 N.W. 320, 28 L.R.A.,N.S., 563, the fire escape was negligently attached to the building. The employee was hurt while using it. At 147 Iowa page 241, 124 N.W. page 321, the question is succinctly stated: "Is the master's obligation to furnish his servant a safe place to work fully satisfied and discharged by the exercise of reasonable care in selecting a competent independent contractor to make it safe?" At page 245, 124 N.W. at page 322, we held the answer to be negative: "It was for the jury to say whether due care would have discovered the defect and applied a remedy before the accident." The court concluded at page 246, 124 N.W. at page 322, "The standard to which the master must con-

form is that of reasonable care. He may employ servants or contractors to do the work which the law requires of him, but he can not delegate to them the exercise of the care which the law imposes upon him as a personal obligation."

VI. Defendant relies heavily on Wagner v. Larson, 257 Iowa 1202, 136 N.W.2d 312. His brief reads: "It is submitted that if the connection was in fact unsafe, the reason for this is because of improper design by either John Deere or Farmhand. And, as in the *Wagner* case, the record is totally lacking of any evidence that the defendant knew anything about the design of machinery, safety devices, or available improvements to reduce danger.[1]

"This court held in *Wagner* that it is not the duty of the purchaser-employer to redesign and relocate the component parts of farm machinery. Additionally, the defendant cannot be held to the same degree of judgment as Mr. Wardle. The *Wagner* case and the instant case may be summarized in the following language which appears in *Wagner*. 'Plaintiff seeks to hold his employer negligent in failing to exercise the judgment that might be expected of a mechanical or safety engineer. This would go far beyond anything we have said or are willing to hold.'"

We think defendant claims too much for Wagner v. Larson. Here there are two pieces of equipment. Each in itself, if all pieces of equipment for which the machinery was designed were used, might be found to be adequate. Where the pieces were operated together the jury could find they created a serious and unnecessary hazard to the employee.

We do not extend the holding in Wagner v. Larson, supra, as defendant would have us, to the rigid rule that the farmer-employer can never be held responsible for accidents caused by use of dangerous ma-

---

1. The jury could find defendant did not use all the devices for which the equipment was designed, and defendant himself told of owning an extensive line of equipment including trucks, tractors, unloading wagons, choppers and other farm machinery.

chinery where the danger is due to design defect. Such a rule would clearly allow the employer to delegate his nondelegable duties contrary to the foregoing authorities. Wagner v. Larson, supra, must be read with the requirement that the employer must use reasonable care to inspect and examine the machinery furnished to the employee.

■ As we said in Calkins v. Sandven, 256 Iowa 682, 697, 129 N.W.2d 1, 9, "The servant is ordinarily under no duty to inspect such tools and machinery. The duty of inspection is the master's. The servant may assume, in the absence of knowledge to the contrary, he has been furnished tools and machinery that are reasonably safe. Warner v. Spalding & Kearns, 186 Iowa 137, 144–147, 172 N.W. 263, and citations; Johnson v. Minneapolis & St. L. R. Co., 183 Iowa 101, 110–113, 165 N.W. 51; Parkhill v. Bekin's Van & Storage Co., 169 Iowa 455, 465–467, 469–470, 151 N.W. 506; 56 C.J.S. Master and Servant §§ 238, 239.

"35 Am.Jur., Master and Servant, section 141, states: 'The duty of an employer to * * * furnish them with safe tools and appliances with which to work, carries with it the duty to inspect * * * the tools, machinery, and appliances with which their labor is performed. * * * There is no duty on employees to make such inspection unless they are expressly charged with that duty.' "

■ Here the jury could find there was an additional part of the John Deere shield that was not used. The shield used remains over the mechanism immediately below. The mechanism was not shielded from back to front and deviations in level allowed for diminution of the shielding effect. (It should be noted that as used the connection at the tractor was 20 to 23 inches above the ground, the drive shaft connection at the wagon was only 15 to 16 inches above the ground.)

The material part of the machinery was detached from the tractor and wagon and produced in Court. The evidence tending to show negligence on the part of plaintiff goes to mitigation of damages, the jury was so instructed and it is presumed to have considered such evidence for that purpose. The ultimate question of defendant's negligence was also for the jury.

Affirmed.

GARFIELD, C. J., and MOORE, RAWLINGS, and LeGRAND, JJ., concur.

LARSON, SNELL, STUART and MASON, JJ., dissent.

LARSON, Justice (dissenting).

I respectfully dissent. The effect of the majority opinion is to obliterate negligence as a basis of liability in farm accident cases and replace this well-established doctrine and principle with strict or absolute liability. The substantial effect upon the farm employer is to require him to assume liability for all accidents involving his employees. The vehicle through which this far-reaching and questionable effect is achieved is by permitting jury consideration of the issue of negligence solely upon the opinion of a knowledgeable person that a farm operation or procedure is unsafe. In doing so, the majority overlooks completely the consistent holdings of this court that it is not the relative danger involved, but rather negligence, that gives rise to a litigant's claim for damages. Kregel v. Kann, Iowa, 152 N.W.2d 534; Wagner v. Larson, 257 Iowa 1202, 136 N.W.2d 312.

Although we have recognized many acts and omissions by a farm employer as a breach of his duty to the employee, we have not, until this opinion, extended this duty to charge the farm employer with the knowledge or judgment of an expert in the use and operation of properly-shielded farm implements.

The precise issue presented is whether defendent failed to exercise a reasonable degree of care in the operation of the connected tractor and wagon involved.

We review the evidence to determine, not whether it proves defendant guilty of negligence in failing to exercise reasonable care to provide and maintain reasonably suitable and safe appliances for his employee to use, but whether it makes a sufficient showing so that the trial court was warranted in submitting the question to the jury and the jury in the exercise of its function as the trier of facts was justified in finding defendant negligent. Kregel v. Kann, supra; Kauzlarich v. Fitzwater, 255 Iowa 1067, 1069, 125 N.W.2d 205, 206; Anderson v. Elliott, 244 Iowa 670, 673, 57 N.W.2d 792, 793.

In my judgment, the testimony of plaintiff's expert and his opinion as to the safety of this connection are not alone sufficient to establish that its use was a breach of the employer's duty, and are not sufficient to generate a jury question as to his negligence. Kregel v. Kann, supra. I find absolutely no evidence which even inferentially would support plaintiff's allegation of defendant negligence, and none at all which would support a proximate cause allegation.

With the exception of plaintiff's expert, all testimony produced was to the effect that the shields used in this operation were reasonably safe, and there is not one scintilla of evidence that the defendant knew or should have known that the operation was unsafe. Both the plaintiff and his brother thought it was safe. There is no claim that the shields used did not meet the standards established by the American Society of Agricultural Engineers. Plaintiff's expert admitted that fact. His position was that these shields were not meant to work together, thus making them "incompatible". He based this opinion upon the fact that "there is an opening between the two shields as they operate which is sufficient for clothing to go between * * * and be caught

on the revolving shaft." There is not a scintilla of evidence revealed under this record to show that defendant was aware of a dangerous situation due to this so-called "opening", which obviously was necessary for proper operation of such equipment over uneven ground. It is apparent from a brief examination of Exhibits A and B that some clearance between the tractor shield and the revolving knuckle underneath that shield, about six or eight inches, is necessary to allow for verticle and horizontal operation and to permit the disconnecting operation. Apparently it was so designed. The connection appears proper to me, but of course, like the defendant, I am no expert.

However, if it be conceded that this connection was improper and amounted to a latent or hidden defect, we have often stated that unless it is also shown by plaintiff that the defendant knew or should have known about the defect, its use would not amount to negligence. Sample v. Schwenck, 243 Iowa 1189, 1195–1197, 54 N.W.2d 527, 530, 531; Rehard v. Miles, 227 Iowa 1290, 1296, 1298, 290 N.W. 702, 705, 706.

Of course, the standard by which the defendant must be judged is that degree of care which an ordinary prudent farm employer would exercise under the circumstances. Kregel v. Kann, supra. This clearly is not a case of defective equipment known to the employer, or of an inexperienced employee, or of the use of individual machines which were not properly shielded.

I believe that under the evidence it must be concluded as a matter of law that the defendant acted as a reasonably prudent man and could not have anticipated or foreseen the accident that occurred. It was simply a freak accident, faulting no one.

As the majority conceded, it was plaintiff's burden to submit evidence of negligence or breach of defendant's duty to plaintiff sufficient to warrant the submission of that issue to the jury. It must be shown that defendant failed to use reason-

able care to provide and maintain for his employees reasonably suitable and safe appliances, machinery and tools, with which to work. Kregel v. Kann, supra. It is the reasoning and conclusions reached by the majority which is not supported by the evidence. In its statement of fact it says: "The tractor shield extends over the exposed knuckle mechanism but allows an open space between the tractor shield and the knuckle where clothing or other material can contact the revolving knuckle." To say the least, this is a misleading statement. It fails to state this is a horizontal, not a verticle, space, reached only by a thrust from outside underneath the tractor shield. The record is clear that the only way clothing or other articles could get caught in the revolving knuckle is for one to extend the clothing or article up under the tractor shield. True, if one would thrust an arm or leg covered with a loose, frayed, or torn piece of clothing under the tractor shield, the cloth could invade the narrow area in which the knuckle was revolving and catch on the release button. Apparently that is what happened here and, as I see it, such an occurrence could not reasonably be anticipated or avoided. That such a knuckle is necessary and such a clearance for this operation is required cannot be disputed. In other words, it is clear that considerable inept carelessness is necessary to involve one's clothing in that revolving part.

Without setting out the testimony to support its conclusions, the majority states: "The men were using two pieces of equipment, each involving parts moving *with considerable force and speed*, which, if not adequately shielded, create a *high degree of danger.*" (Emphasis added.) I can find nothing in this record to support a conclusion that these parts were moving with considerable force and speed, or that they created a "high degree of danger."

It is stated this evidence would support a conclusion that "The tractor shield is built *expressly* to be connected to another half-moon type shield which is fastened to it and extends the full length of the PTO exten-

sion." (Emphasis added.) The only testimony that such an extension was even available was given by plaintiff's expert, and even he did not say the shield on the tractor was expressly built to receive such an attachment. At best, there is only an inference that such an extension was available for use when the connecting *power shaft was exposed,* which was not the case before us. He said bolt holes were placed in the tractor shield to facilitate that attachment when necessary. This is a far cry from saying this tractor shield was built expressly for another half-moon shield. No other person, including the local tractor dealer, had even seen such an extension, and the evidence indicated none had been used in that vicinity. To a like effect is the majority conclusion that "The additional shield *for which the tractor was designed* was not used." (Emphasis added.) For the reason given, such a statement is not justified by this record. The only fair conclusion under this evidence recited by the majority is that "Each piece of equipment had its own shielding devices." It is the only one the jury could find under this evidence. Since there was no testimony as to the speed or force of the revolving parts, no evidence that the tractor shield was expressly built for an additional shield, or that the tractor was designed for an additional shield to be used in such circumstances, the jury could not find defendant negligent in those respects.

The majority further misstates the testimony of the so-called expert to the effect that "The two types of shields *do not cover* the moving parts and are therefore incompatible." (Emphasis added.) His opinion was that the shields were incompatible, but he did not, nor could he, state they did not cover the moving parts. He simply stated he thought the conbination was unsafe because it left an open space underneath the tractor shield which clothing or other material could enter and get caught in the shaft. He testified generally that it is possible in some instances for a revolving part to set up air currents which would

draw clothing into the parts as well as repel them. He did not say that is what occurred, and the physical evidence would not indicate any such occurrence here. The plaintiff himself said he slipped as he attempted to cross the shielded power shaft and inadvertently stuck his foot up under the tractor shield. Obviously, the force of this kick would propel any loose or frayed ends of his coveralls into the otherwise fullycovered revolving parts. Protecting against such an accident would, of course, be impossible if access to the connection and the necessary maneuverability is considered. It would also have occurred with the additional half-moon shield if the foot had come up underneath the shield into the revolving knuckle.

True, the witness stated in his opinion that it "would be feasible and practical for a farm owner to adequately shield the power take-off" connection, and said he had seen some adaptations which he would consider adequate, that a half-moon extension shield was made to cover the power-driven bar, but he did not explain how they would protect against one's foot coming up underneath the shields when one in the vicinity slips and loses his balance, as plaintiff did here.

The ultimate effect of this opinion is that a farmer who buys two properly-shielded pieces of equipment, made to be used as he was using them, can be held liable for damages to an injured employee, even though the experienced employee concedes he did not consider the combination dangerous. The majority does not suggest what the farm employer should have done, except to use an extension shield not made or recommended for this purpose.

I find no actionable defendant negligence revealed by this record, and would reverse.

SNELL, STUART, and MASON, JJ., join in this dissent.